## MICHIGAN TRUST CO. *v.* LUTON.

1. APPEARANCE—GENERAL—ATTORNEY AND CLIENT—PROCESS.
   A general appearance by a duly authorized attorney is the
   equivalent of personal service as term is used in Court Rule
   No. 28 (1931), relative to setting aside defaults.

2. EQUITY—MORTGAGE FORECLOSURE—AFFIDAVIT OF DEFAULT.
   Validity of affidavit of default in mortgage foreclosure pro-
   ceeding is not affected by affiant's failure to sign it.

3. AFFIDAVITS—SIGNATURE.
   Affidavits are valid if properly sworn to, even though not signed
   by affiant.

4. EQUITY—MORTGAGES—PRO CONFESSO FORECLOSURE—AFFIDAVIT OF
   REGULARITY—FILING.
   Affidavit of regularity was not invalid merely because filed
   prior to taking of decree in mortgage foreclosure proceedings
   (Court Rule No. 50 [1931]).

5. SAME—MORTGAGE FORECLOSURE—SERVICE OF PAPERS ON DEFEND-
   ANT.
   Failure to serve copies of affidavit of default, affidavit of regu-
   larity and order *pro confesso* in trust mortgage foreclosure
   proceedings *held*, not to impair validity of proceedings, where
   defendants' attorney had full knowledge of what was being
   done and participated in some steps of the proceedings.

6. SAME—DEFAULT—SALE TO TRUSTEE.
   Default, order *pro confesso,* decree and sale to trustee in trust
   mortgage foreclosure proceedings *held,* valid and should not
   be set aside after expiration of six months from entry of
   default where mortgage trustee also acted as trustee man-
   aging mortgaged property as sale was properly advertised
   and no deficiency claimed, although beneficial owners were
   represented by independent counsel (Court Rule No. 28
   [1931]).

7. TRUSTS—FRAUD—LOAN TO BENEFICIAL OWNERS.
   Record *held,* to present no fraudulent conduct on part of trus-
   tee under management trust who made loan to beneficial
   owners secured by trust mortgage.

8. SAME—RESIGNATION OF TRUSTEE FROM ONE OF CONFLICTING POSITIONS.

Trustee under trust mortgage should have resigned as trustee under management trust when foreclosure proceedings became advisable in order to avoid owing two conflicting duties.

9. SAME — DERELICTION OF TRUSTEE — DUAL POSITION — MORTGAGE MORATORIUM ACT.

Trustee, managing property voluntarily placed with it for such purpose, *held*, derelict in its duty to beneficial owners where it failed to make an effort to secure for them the benefits of mortgage moratorium act effective prior to expiration of equity of redemption, notwithstanding they were represented by independent counsel, trustee also being mortgage trustee for note holders (Act No. 98, Pub. Acts 1933).

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 5, 1934. (Docket No. 26, Calendar No. 37,582.) Decided June 4, 1934.

Bill by Michigan Trust Company against Alice L. Luton and another to foreclose a trust mortgage. From decree setting aside sale and denying motion to set aside default, both parties appeal. Modified and affirmed.

*Warner, Norcross & Judd (Conrad E. Thornquist,* of counsel), for plaintiff.

*Clare J. Hall,* for defendants.

BUTZEL, J. On January 2, 1911, Edith L. Metheany, Alice L. Luton and Lottie C. Luton, of Grand Rapids, Michigan, desiring to be relieved of the care and management of certain property belonging to them, entered into a trust agreement with plaintiff, the Michigan Trust Company of Grand Rapids, as trustee, by virtue of which possession of

the property was transferred to the latter, with full power to care for, manage, control and dispose of it. The trustee was given very broad powers in regard to the property, the net income from which it agreed to turn over, from time to time, to the *cestuis que trustent*. The corpus of the trust consisted of real and personal property then valued at $57,307.19, $30,000 of which represented the value placed on certain property in Grand Rapids, known as 39–47 Fountain street. The agreement provided that any one of the parties could terminate the trust by giving 60 days' notice in writing, but this right could not be exercised by the settlors until repayment, with interest, of any advances made by the trustee under the agreement.

Lottie C. Luton, who subsequently married Tom Thoits of Grand Rapids, died some time prior to 1924. In 1924, Alice L. Luton and Edith L. Metheany, in order to purchase the interest of the estate or heirs of Lottie C. Luton, deceased, applied to the Michigan Trust Company for a loan. They executed and delivered to the trust company, as mortgage trustee, a trust mortgage providing for the issuance of 15 notes of $2,000 each, or an aggregate of $30,000, secured by the Fountain street property. By the terms of the mortgage the notes were delivered to the trust company either for its own use, or to be sold to other parties, as the company desired. Evidently with the consent of the mortgagors, only $22,000 of the principal sum, the amount required to purchase the interest of Mrs. Thoits, was turned over to the defendants at the time of the mortgage, and 11 notes were authenticated by the trustee. Three of the four remaining notes of $2,000 each were subsequently negotiated, and the

moneys accounted for. This still left one note of $2,000 that was neither used nor negotiated. When the necessity arose for its use, the mortgage was long past due and the note could not be sold, nor was there any duty on the part of the trustee at that time to advance money on a past due and unpaid note upon which default had been made.

On August 3, 1932, the Michigan Trust Company brought foreclosure proceedings as trustee under the mortgage. In addition to the $28,000 principal due on the mortgage, it was also claimed that the instalments of interest due on April 22, 1931, and subsequent thereto, as well as taxes and other assessments, were due and unpaid. The trust company, as trustee under the mortgage securing the notes, was occupying the anomalous position of attempting to foreclose on property held by it as trustee for the mortgagors under the management trust. It could not with propriety occupy a dual position of this nature without subjecting itself to severe criticism as well as inviting litigation. For that reason we have critically examined the proceedings.

The mortgagors, Alice L. Luton and Edith L. Powell (formerly known as Edith L. Metheany), did not rely upon the trust company, as managing trustee, to look after the defense of the mortgage foreclosure. They employed a well-known and highly-respected attorney, of the Grand Rapids bar, to take care of their interests. The latter accepted service of the summons and entered defendants' appearance in the case, notwithstanding the fact that they were not personally served with process. He then permitted their default and an order *pro confesso* to be entered, but checked over the figures in the decree before it was presented to the court. On December 6, 1932, a *pro confesso* decree was entered.

On March 25, 1933, the mortgaged premises were sold under the decree of the circuit court commissioner, and were bid in by plaintiff, as mortgage trustee, for the total amount of the mortgage debt, so that no deficiency is claimed. Ten days later an order was entered confirming the sale unless cause to the contrary was shown within eight days. We have carefully examined the record and can find no irregularities in the proceedings, nor does it appear that the interests of the mortgagors and defendants herein were neglected. Defendants' attorney was confronted with a situation where his clients, the defendants herein, were unable to pay money loaned to them in good faith. He therefore acknowledged the debt and rights of plaintiff.

On August 17, 1933, eight months after the default decree had been entered, defendants acting through a different attorney, substituted for their former one, filed a motion to set aside their default and the sale thereunder. The trial court refused to set aside the default, in view of Court Rule No. 28 (1931), which provides that:

"In all cases where personal service shall have been made upon a defendant, and proceedings taken after default on the strength thereof, his default shall not be set aside unless the application shall be made within six months after such default is regularly filed or entered."

However, the court did order a resale of the property, to follow plaintiff's resignation as managing trustee for the defendants. Both parties have appealed from the action of the trial judge, for reasons which we shall now discuss.

Defendants claim that Court Rule No. 28 (1931) is not applicable to the instant case because the de-

fault was not validly and regularly entered for the following reasons: (1) There was no personal service upon defendant; (2) there was no valid affidavit of default, since it was not signed by the affiant; (3) the affidavit of regularity was invalid because filed prior to the taking of the decree; (4) copies of the affidavits and of the order *pro confesso* were not served upon defendants' attorney.

(1) Although there was actually no personal service upon defendants, their attorney accepted service of the summons and entered their appearance in the case. A general appearance by a duly authorized attorney is the equivalent of personal service. *Hempel* v. *Bay Circuit Judge,* 222 Mich. 553; *Najdowski* v. *Ransford,* 248 Mich. 465. There was, therefore, a substantial compliance with the requirement of personal service found in Court Rule No. 28 (1931). *Kentucky Wagon Manfg. Co.* v. *Kalamazoo Circuit Judge,* 208 Mich. 267; *Westlawn Cemetery Ass'n* v. *Wayne Circuit Judge,* 238 Mich. 119.

(2) The failure of the affiant to sign the affidavit of default did not affect the validity of the affidavit. Affidavits are valid if properly sworn to, even though not signed by the affiant. *People, ex rel. Dickinson,* v. *Simondson,* 25 Mich. 113; *Bloomingdale* v. *Chittenden,* 75 Mich. 305; *Wynkoop* v. *Grand Traverse Circuit Judge,* 113 Mich. 381.

(3) There is no merit to defendants' claim that the affidavit of regularity was invalid because filed prior to the taking of the decree. It was on file at the time the decree was taken, in accordance with Court Rule No. 50 (1931).

(4) Failure to serve copies of the affidavits and the order *pro confesso* upon defendants' attorney did not impair the validity of the proceedings. Defendants' attorney had full knowledge of what was

being done. He examined the decree before its presentation to the court, checked the figures therein, and agreed to their accuracy. He further stipulated in writing as to the amount of the attorney fee to be allowed to plaintiff. Since he had actual notice of the proceedings which were taken, there was no necessity for the service of papers.

We therefore agree with the trial court that the default was validly and regularly entered.

Defendants further claim that the proceedings taken after default in the instant case were not valid and regular. They contend that the trust company could not properly start an action to foreclose a mortgage on property of which it was in possession as trustee under another trust instrument without first resigning from the latter trust; that Court Rule No. 28 (1931) is therefore not applicable under the authority of *W. H. Warner Coal Co.* v. *Nelson,* 204 Mich. 317, in which this court held that the rule applied only where valid and regular proceedings were taken after the default. In that case the only proceeding taken on the strength of the default of the garnishee defendant constituted a joint judgment entered at the same time against both the principal debtor and the garnishee defendant, in violation of the statute providing an interim of at least two days between the judgment against the principal defendant and that against the garnishee defendant. It thus appears that the only proceedings taken after default in that case was a judgment which the court had no power to enter, under the statute. In the instant case, whatever may be our view as to the propriety of plaintiff's conduct in acting in a dual capacity throughout the transaction, the court had unquestioned power to enter the foreclosure decree and order a sale thereunder. The decree and sale were

valid and effective, at least until attacked by the *cestuis que trustent,* the defendants herein, and the proceedings following default were, therefore, valid and regular within the meaning of Court Rule No. 28 (1931). The trial court therefore properly refused to set aside the default.

We now come to the most serious question in the case, whether the conduct of plaintiff was such as to justify the court in setting aside the foreclosure sale. We have scrutinized with care plaintiff's entire action, and are unable to find any fraud therein. This is not the case of a purchase by the trustee of the trust property from himself, at his own sale. The entire transaction was initiated voluntarily by defendants, for their own advantage. When defendants were seeking a loan it was not at all unnatural for them to go to the trust company, which was acting as manager of their property, and which made mortgage loans in the ordinary course of its business. While it might have been better policy had plaintiff refused to make the loan while acting as trustee, it cannot be said that the trust company did not act in good faith in thus accommodating defendants at their own request. No fraudulent conduct is shown on the part of the trust company either prior or subsequent to the making of the loan.

We believe, however, that plaintiff should have resigned its position as managing trustee when it became necessary for it, in another capacity, to assume a hostile position against the defendants. When a resort to foreclosure became advisable, the trust company found itself in the position of owing two conflicting duties. On the one hand, on behalf of the note holders, it was interested in purchasing the property for as small an expenditure as it might be obliged to pay; on the other hand, as manager

of defendants' property, it should have been interested in obtaining as high a price as possible at the foreclosure sale. Under such circumstances the trust company could not efficiently serve two masters, and should therefore have extricated itself from its inconsistent position before attempting to foreclose the mortgage.

However, after examining the record with care, we can find no infirmity in the sale. After the sale had been properly advertised, the trust company purchased the property for the full amount of the loan, plus interest, so that no deficiency is claimed. It is significant that the purchase price so paid by plaintiff was higher than the valuation placed upon that property by the parties in the management trust agreement of 1911. The depressed condition of property values may account for the fact that there were no bidders for more than the amount due on the mortgage.

On the other hand, while there was no infirmity in the sale, the trust company was derelict in its duty to defendants subsequent to the foreclosure sale, in failing to make an effort to secure for them the benefits of the moratorium statute, Act No. 98, Pub. Acts 1933. This act became effective on June 2, 1933, subsequent to the foreclosure sale and during the equity of redemption. We are not unmindful of the fact that defendants' present attorney was substituted on August 17, 1933, and that the equity of redemption did not expire until September 25, 1933, so that the latter had ample time in which to apply for the benefit of the moratorium statute. He did move to set aside the default, and the sale would have been nullified had such motion been granted. However, the fact that defendants were represented by independent counsel did not relieve plaintiff of

the duty of attempting to secure for them the benefit of the moratorium statute. This was a substantial right, which plaintiff, as trustee of defendants' property, should have made an effort to secure for them by making the proper showing to the court. Instead, by remaining silent, the trust company performed the inconsistent duty which it owed as mortgage trustee for the note holders, of attempting to secure possession of the property free from the equity of redemption as quickly as possible.

For the above reasons, we are of the opinion that the decree of the lower court should be modified. The sale should be confirmed subject to the condition that defendants may within the next 60 days apply to the trial court for the benefit of the moratorium act (Act No. 98, Pub. Acts 1933), so that, upon doing equity as ordered by that court, they may have possession of the property and the right to redeem on or before March 1, 1935. The full facts in regard to the status of the management trust are not before us. The trial judge shall therefore determine when the management trust shall terminate, upon a proper accounting. The cause is remanded to the trial court to modify its decree in accordance with this opinion. Defendants will recover costs.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.