VOZBUT v. POMPUTIS.

1. DEFAULT—ENTRY—APPEARANCE—LAPSE OF TIME.
   Default for failure to plead, which was regularly entered after personal service and appearance of defendants in suit commenced by bill in aid of execution held, wrongfully set aside after lapse of almost a year and seven months (Court Rule No. 28, § 4 [1933]).

2. APPEAL AND ERROR—RECORD—COLLOQUY—STENOGRAPHIC NOTES.
   While statute only requires that court stenographer take full notes of testimony and charge to jury, the right of review is of little protection to litigants unless the court permits stenographic record to be made of discussion which counsel believe important, but claim of error in such respect is not passed upon where nature of unreported discussion is not stated (3 Comp. Laws 1929, § 13777).

3. WITNESSES—ATTORNEY AND CLIENT—CANON OF ETHICS.
   Breach of canon of ethics relating to impropriety of lawyer being witness for his client except as to merely formal matters held, not reversible error (Canons of Professional Ethics, No. 19).

4. Appeal and Error—Evidence—Attorney and Client.

Claimed error in permitting defendant's attorney, in suit commenced by bill in aid of execution, to describe note given to judgment debtor's grantee of property sought to be reached *held*, not reversible, where objection was that note itself was best evidence but no objection was made to the character of the testimony or its source.

5. Creditors' Suits—Prima Facie Case—Burden of Proof—Evidence.

In suit commenced by bill in aid of execution, evidence *held*, insufficient to sustain burden of proof cast upon judgment debtors and their transferees after plaintiff had made out his statutory *prima facie* case (3 Comp. Laws 1929, § 14617).

6. Costs—Prolix Briefs.

Costs to appellant, prevailing on appeal, are reduced to cover size of brief which would have been sufficient without detracting from its value, prolixity not being encouraged (Court Rule No. 67 [1933]).

Wiest, J., dissenting.

Appeal from Kent; Brown (William B.), J. Submitted June 3, 1936. (Docket No. 39, Calendar No. 38,975.) Decided October 5, 1936.

Bill in aid of execution by John Vozbut against Michael Pomputis and wife and Joseph M. Stank and wife. Bill dismissed. Plaintiff appeals. Reversed and decree entered for plaintiff.

*Michael Garvey,* for plaintiff.

Bushnell, J. This is an appeal from a decree dismissing a bill in aid of execution. Plaintiff foreclosed a real estate mortgage, and bid in the premises with a certified deficiency in the sum of $807.37. The moratorium phase of the foreclosure, commenced on May 10, 1933, was determined in *Vozbut v. Pomputis,* 273 Mich. 388. Defendants Pomputis conveyed the property, now involved, by a warranty

deed to defendants Stank, recorded May 20, 1933. The date of the deed and its acknowledgment is written in ink as March 10, 1933, but the deed also shows that its date was originally typed as the blank day of May.

Reading of the testimony, the details of which are of little interest to anyone, indicates that the court ignored the provisions of 3 Comp. Laws 1929, § 14617, which says in part:

"In all suits begun or hereafter to be begun by the filing of bills in aid of execution, the complainant shall make a *prima facie* case by introducing in evidence the judgment against the principal defendant, the execution with the levy or levies thereon indorsed and proof of the conveyance or conveyances complained of. The burden of proof shall then be upon the judgment debtor, or the person or persons claiming through or under him or the person or persons whom it is claimed are holding property in trust for said judgment debtor to show that the transaction or transactions are in all respects *bona fide* or that such person or persons are not holding as a trustee or trustees of said judgment debtor."

Plaintiff made the required *prima facie* proof, but defendants failed to sustain the burden of showing the *bona fides* of the transaction. Defendants Pomputis' answer admitted the mortgage indebtedness, the foreclosure sale and the correctness of the deficiency. The prior ownership of the property upon which levy was made and subsequent execution of the deed to defendants Stank were also admitted; they denied, however, that the conveyance was fraudulent, claiming advances to them by Stank in the aggregate of $2,000. They averred that it was understood that upon repayment of this amount with interest, the property was to be returned to them and that any value of the premises in excess of the

amount due Stank is subject to levy and sale. They admitted having no property subject to execution except their rights, if any, in this property.

For failure to plead, all of the defendants were defaulted by an order *pro confesso* on May 7, 1934, the default of defendants Pomputis being set aside by stipulation on May 12th.

Notwithstanding Court Rule No. 28, § 4 (1933), after plaintiff had completed his proofs and rested his case, defendants Stanks' motion to set aside their default was granted by the court December 4, 1935, almost one year and seven months after the default was regularly entered. The rule cited states:

"In all cases where personal service shall have been made upon a defendant and proceedings taken after default on the strength thereof, his default shall not be set aside unless the application shall be made within four months after such default is regularly filed or entered."

The default for failure to plead was regularly entered after personal service and appearance; the default should not have been set aside. *Michigan Trust Co.* v. *Luton,* 267 Mich. 547.

Plaintiff says that he was denied his constitutional right of "due process" because of claimed erroneous conduct by the trial judge whereby counsel was put in fear by threat of removal from the courtroom. Counsel claims he was attempting to explain what he desired to prove by the cross examination of the witness Stank when the court said:

"Don't talk back to me. I will send you out of the courtroom. I won't allow an attorney to talk back to me when I am telling him how to conduct a lawsuit and if you don't get your mind on what I am talking about, to get down here to trying this case, I will remove you from the courtroom. Now,

get that in your head! This is not a case of just being bull headed; it is a case of knowing how to practice law in the circuit court and doing it and you are going to do it in this case now, without saying anything back to me. You start in and examine this witness more to the point, more intelligently, than you have been doing in the last hour. Now, go ahead."

Up to this time, counsel had been examining Stank as to the source of the funds claimed to have been advanced by him to Pomputis. The witness was adverse and evasive and considerable latitude should have been allowed counsel. However, after the remarks just quoted, counsel deemed discretion to be the better part of valor and changed his course of examination.

We have sufficiently indicated our views on the power of the court to control the conduct of trials in *Madalinski* v. *Hill, post,* 219, and shall not repeat them here.

The record discloses a more serious development in the unfortunate colloquy. We quote:

"*The Court:* Why take so much time?

"*Mr. Garvey:* Leading a witness of this type, it takes time. It can't be brought out at once. Counsel is on a shaky point and he knows it right now.

"*Mr. Smolenski:* I object to that.

"*The Court:* That is what I call pettifogging.

(Discussion. Mr. Garvey requested that the discussion be taken down by the court reporter and the court did not permit it to be taken down, ruling that it is not to be taken down, and the reporter did not take down this part of the discussion.)

"*Mr. Garvey:* I want it into the record, if the court please.

"*The Court:* You had better go ahead. He can take this. I may decide to make this very brief and

if I do, it will be brief. If you will proceed in an intelligent manner—counsel all know how to try a lawsuit and you do, Mr. Garvey; you do know how. You are not in the class of people that do not know better; you do know better. And if it comes to a place where I feel it is a total waste of the court's time, I will certainly tell you that I won't take it. I don't want to waste my time entirely. The time already taken on this witness amounts to perfectly nothing. You will admit that.

"*Mr. Garvey:* I will not, your honor. I say it is a very valuable point that I was getting up to."

Then followed more colloquy leading up to the first quoted remarks.

The statute (3 Comp. Laws 1929, § 13777) only requires that the stenographer "take full stenographic notes of the testimony and charge to the jury in the trial of each issue of fact before the court or jury."

The right of review, however, affords scant protection to litigants if the trial court will not permit its stenographer to make a record of a discussion which counsel believes to be of sufficient importance to be passed upon by an appellate court. We realize that it is unwise to lay down explicit rules for the conduct of trials that may tend to curtail the powers of judges. It would seem, therefore, that the suggestion of such impropriety would sufficiently obviate future action of this nature. Since counsel does not state the nature of the unreported discussion, it is unnecessary to pass upon this claim of error. Where a statute provides that all statements made by a party or attorney interested in a cause on trial and all other matters that might properly be a part of a case made for appeal or proceedings in error shall be taken down and transcribed by the stenographer if requested, a refusal of the court to

permit this to be done has been held to be reversible error. *Canafax* v. *Bank of Commerce of McLoud,* 76 Okla. 289 (184 Pac. 1014; 8 A. L. R. 59).

Plaintiff says the court erred in permitting defendants Pomputis' attorney to describe a note given to defendant Stank and argues that such testimony was in violation of Rule No. 19 of the Canons of Professional Ethics of the American Bar Association. The canon reads:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

This is a well-recognized rule of propriety, but its breach is not reversible error. Plaintiff's objection was that the note itself was the best evidence; he did not object to the character of the testimony or its source.

Generally speaking, the remainder of appellant's claims of error go to the sufficiency of defendants' testimony. Without discussing these questions in detail, an examination of the evidence *de novo* satisfies us that neither the judgment debtors Pomputis nor the Stanks, who claim title through them, sustained the statutory burden of proof.

Appellant's brief contains 116 pages. Court Rule No. 67 (1933), does not place any limitation upon the length and extent of a brief, but undue prolixity should not be encouraged. In this instance, we feel that appellant's brief could have been shortened without detracting from its value; a brief of not more than 50 pages would have been sufficient. Costs may be taxed accordingly.

The decree is vacated and one will be entered in favor of appellant as prayed for in his bill of complaint. Appellant shall have his costs except as indicated above.

North, C. J., and Fead, Butzel, Sharpe, and Toy, JJ., concurred with Bushnell, J.

Wiest, J. (*dissenting*). My reading of the record leads me to agree with the opinion of the circuit judge.

If Pomputis owed Stank he had a right to secure or pay the debt before the levy of plaintiff's execution.

The *prima facie* case, contemplated by the statute, was met by evidence of *bona fide* dealings.

I think the decree should be affirmed, with costs to defendants.

Potter, J., did not sit.