KUTIEJ v. KUTIEJ.

1. DIVORCE—SETTING ASIDE DEFAULT.

Motion to set aside decree of divorce, was properly denied where there had been personal service on defendant wife, first default was set aside, there was failure to plead within time allowed, a second default was entered and she then waited over four months before filing motion to set aside second default and decree (Court Rule No. 28, § 4, No. 48, § 1 [1945]).

2. SAME—DEFAULT—COSTS.

No costs are allowed upon affirmance of order denying wife's belated motion to set aside second default and decree of divorce entered.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 8, 1947. (Docket No. 11, Calendar No. 43,502.) Decided April 8, 1947.

Bill by Afanasj Kutiej against Rosalia Kutiej for divorce on grounds of extreme and repeated cruelty. Decree for plaintiff. Motion by defendant to set aside default. Motion denied. Defendant appeals. Affirmed.

*Robert J. Wojcinski,* for plaintiff.

*Roman V. Ceglowski,* for defendant.

BUSHNELL, J. Afanasj Kutiej began divorce proceedings on March 23, 1945, and a summons was personally served upon the defendant, Rosalia Kutiej, on March 25, 1945. Upon her failure to enter an appearance, her default was taken on April 12, 1945.

On April 19th, upon stipulation, this default was set aside and defendant was granted 15 days in which to plead. On May 7th, upon her failure to file an answer, another order of default was entered. The report of the friend of the court was filed on July 13th, and the matter was heard as a *pro confesso* case on September 19th. The decree granted to plaintiff was filed October 1st.

On November 28, 1945, defendant filed a motion to set aside the divorce decree and dismiss plaintiff's bill of complaint, and at the same time she filed an answer and cross bill. Plaintiff filed his answer to the motion on December 11th, in which he asked that defendant's petition to set aside her default be denied for the reason that more than 4 months had elapsed since its entry. The entire matter was again referred to the friend of the court for investigation. After considering that report and hearing the arguments of the respective counsel, the court, on February 21, 1946, denied defendant's petition to set aside the decree. Defendant subsequently moved to reconsider the matter and a more comprehensive report of the friend of the court was submitted and considered. On March 20th the court denied defendant's motion to reconsider and entered an appropriate order.

Defendant has appealed and claims that the court was in error in refusing to set aside the decree. She argues that the decree unjustly deprived her of her property and failed to provide security for herself and children. She insists she was fraudulently induced by her husband to abstain from contesting his action and relied upon his promise to divide the property which was owned jointly by the parties. Defendant denies having had notice of the *pro confesso* hearing and of the settlement of the decree entered thereon.

The parties were married on June 19, 1928, and have two children. At the time the cross bill was filed, the son, Henry, was 16 years old, and the daughter, Regina, 13. In the decree of divorce, defendant was awarded the care, custody and education of the minor children, and plaintiff was ordered to pay the sum of $12 per week ($6 for each child) for their support, until they reached the age of 17 or until a further order of the court. The joint property, a two-family flat, was awarded to the plaintiff, who was required to pay his wife the sum of $700 in cash for her interest therein. The wife was given the household furniture and furnishings located in the lower flat, and plaintiff, those in the upper flat.

In defendant's sworn petition to set aside the divorce decree, the sole reason assigned was that she was not in a position to retain an attorney to appear in her behalf because she did not have sufficient money for this purpose.

The first report of the friend of the court shows that the husband was employed at the Ford Motor Company at an average weekly earning of $54, and the wife was employed by the Intercity Manufacturing Company at an average weekly earning of $37.80; that she had $1,700 in postal savings and owned war bonds with a maturity value of $125. The property, held jointly, was said by plaintiff to be worth at that time about $2,000. These representations as to financial worth were sworn to by the respective parties.

In the second report, defendant, then a petitioner to have the cause reopened, stated under oath that she was satisfied to allow her former husband to have the divorce, but that she was not satisfied with the property settlement in the decree, claiming the joint property was worth $3,500, and offered to pay

her husband $1,700 for his share thereof. The sworn financial statements at that time indicated that the husband's earnings had dropped to $31.76 a week, and the wife's income, including the alimony being paid her by her husband, amounted to $42, and that she still had in postal savings the sum of $1,500.

The record shows that the court took testimony in this cause on four separate occasions. All of defendant's allegations were thoroughly investigated and the court, in an opinion dictated on the record, carefully analyzed the financial situation of the parties and recited the various steps in the divorce procedure. The trial judge said in part:

"This court attempts in these cases to be absolutely fair, and I lean over backwards in favor of the woman. But I can not lean over backwards in favor of a woman if she is not around to tell me what her rights are. If she forecloses herself, that is too bad; it is her fault. I do not think a file could be found in this court where a woman has been accorded, or any litigant has been accorded, any fairer treatment, or where the rules have been lived up to any more than I find in this file right here. The mere fact that somebody is dissatisfied with what happened, and now comes in with an afterthought, does not change the rules and does not change the situation. Had she come in here originally and showed me what she now claims to be the value of the property, et cetera, she would have a different decree entered. I do not know why she did not come in. I do know that she sat on the witness stand yesterday and told me that she lied about certain things. And, I don't believe people who lie, and especially if they tell me that they lied about certain things, or who have never told me what they should have told me, having concealed deliberately their knowledge of material facts."

In a previous opinion, also dictated upon the record, the court, on February 21st, after hearing arguments on defendant's first motion, stated in part:

"Previous to the hearing in this case, plaintiff's counsel gave notice of hearing to the 'attorney for the defendant, making proof of that service; and the testimony is not to be taken until 11 or 12 days later. .'

"I fail to see anything in the motion which would warrant this court in vacating this decree; and I think the friend of the court's opinion or recommendation is quite in point, where they say that 'no showing has been made by the defendant wife that the decree was improperly entered, or that the proceedings were in any way irregular. There is, therefore, no basis for setting aside the decree in this case.' That is so succinct that I will adopt it as my reason. And I will add to that the fact that the litigants, who have full knowledge of the pendency of these proceedings, and who ignore those proceedings, who have the benefit of the setting aside of their default, and then continue to be negligent, for some reason which is not before this court, certainly cannot come into this court and ask this court to set aside the decree entered. She knew all about it. She had money in the bank, under her own sworn statement. There is not any reason in the world why she could not have come in at any time prior to entering this decree on October 1st. She had all of those elapsing weeks and months in which to protect herself. She did not see fit to do so."

In *Domzalski* v. *Guzynski,* 281 Mich. 175, the Court said:

"Personal service on defendant having been made, proceedings taken after default on the strength thereof, and the motion to set aside the default and judgment not having been made within four months after the default was regularly entered,

the order setting aside the judgment was void. Court Rule No. 28, § 4 (1933); *Vozbut* v. *Pomputis,* 277 Mich. 212; *Zirkaloso* v. *Wayne Circuit Judge,* 246 Mich. 210.''

We deem it unnecessary to repeat that which was recently said in *Bartnik* v. *Samonek,* 313 Mich. 464, with respect to setting aside a default under the provisions of Court Rule No. 28, § 4, and Court Rule No. 48, § 1 (1945). See, also, *Detroit Trust Co.* v. *Sosensky,* 300 Mich. 353.

We have reviewed the entire matter *de novo* and conclude that defendant has been shown every consideration. She may be dissatisfied with the result of her judgment in the matter, but there is nothing in the record, either with respect to the procedure or the conclusions of the trial court, which would warrant the finding that defendant has shown any reversible error.

The order from which defendant has appealed is affirmed. No costs were awarded in the circuit court and none will be awarded here.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.