MINTENER v MICHIGAN NATIONAL BANK

Docket No. 54496. Submitted December 19, 1981, at Lansing.—Decided July 12, 1982. Leave to appeal applied for.

Lois W. Mintener brought a class action against Michigan National Bank in Ingham Circuit Court seeking to recover damages for an alleged breach of trust. Michigan National Bank was trustee under a trust indenture agreement by which nonnegotiable subordinated debentures were issued by a nonprofit corporation operating a retirement residence. Plaintiff and others similarly situated were purchasers of the debentures. The nonprofit corporation then mortgaged its property to Michigan National Bank. Michigan National started foreclosure proceedings more than three years later and the nonprofit corporation started a Chapter XI bankruptcy proceeding. Shortly after beginning the foreclosure proceedings, Michigan National resigned as trustee under the trust indenture agreement. Plaintiff claims that the assets of the nonprofit corporation are insufficient to satisfy its indebtedness to Michigan National and thereafter to pay the debenture holders and other creditors. Plaintiff claims that defendant's dual role as trustee and mortgagee was per se improper and created a conflict of interest resulting in the alleged breach of trust. The court, Robert Holmes Bell, J., granted defendant's motion for summary judgment on the ground that plaintiff had failed to state a claim upon which relief could be granted. Plaintiff appeals. *Held:*

Liability cannot be premised solely on defendant's dual role as trustee and mortgagee and plaintiff did not allege any fraud, bad faith or other wilful misconduct on defendant's part.

Affirmed.

1. APPEAL — SUMMARY JUDGMENTS — COURT RULES.

A reviewing court, in determining the correctness of a ruling on a motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 879.
[2] 55 Am Jur 2d, Mortgages § 565.

granted, must accept as true the well-pled facts in plaintiff's complaint and determine whether plaintiff's claims were so clearly unenforceable as a matter of law that no factual development could possibly justify recovery (GCR 1963, 117.2[1]).

2. TRUSTS — INDENTURE AGREEMENTS — MORTGAGES.

It was not per se improper for a trustee under a trust indenture agreement by which nonnegotiable subordinated debentures were issued to also become mortgagee of property owned by the issuer of the debentures and relied upon by the issuer to provide income for payments on the mortgage indebtedness and to pay amounts owed on the debentures to foreclose the mortgages, resulting in the issuer being unable to satisfy its indebtedness to the debenture holders, where the trustee filed notice of its intention to resign its position as such prior to commencing its action to foreclose the mortgages and where no fraud, bad faith or other wilful misconduct was alleged.

*Foster, Swift, Collins & Coey, P.C.* (by *Philip T. Carter* and *William R. Schulz),* for plaintiff.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.,* for defendant.

Before: MACKENZIE, P.J., and M. F. CAVANAGH and D. F. WALSH, JJ.

MACKENZIE, P.J. Plaintiff brought this class action to recover damages for an alleged breach of trust. The circuit judge found that plaintiff had failed to state a claim on which relief could be granted and granted defendant's motion for summary judgment pursuant to GCR 1963, 117.2(1). Plaintiff appeals by right.

In determining the correctness of a ruling on a motion for summary judgment pursuant to GCR 1963, 117.2(1), the reviewing court must accept as true the well-pled facts in plaintiff's complaint and determine whether plaintiff's claims were so clearly unenforceable as a matter of law that no factual development could possibly justify recov-

ery. See, for example, *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 337-338; 274 NW2d 58 (1978). Plaintiff's complaint alleged in pertinent part:

"1. United Church Manors (hereinafter 'UCM') is a Michigan non-profit corporation operating a retirement residence known as the 'Burcham Hills Retirement Center.'

"2. Defendant is a national banking association incorporated under the laws of the United States.

"3. On or about June 25, 1974 UCM and defendant entered into a trust indenture agreement (hereinafter 'indenture') providing for the issue of $2,500,000.00 in nonnegotiable subordinated debentures by UCM as issuer.

\* \* \*

"4. Thereafter UCM and its agents sold debentures totalling approximately $600,000.00 to various persons (hereinafter 'debenture holders'), including plaintiffs
\* \* \*

"6. The debentures purchased by plaintiffs and by the other debenture holders are, by their terms and by the terms of the indenture, subject and subordinate, as to both principal and interest, to the prior payment of the principal of and interest on all existing or future obligations of UCM for money borrowed which is secured by a first mortgage lien on the real and personal property owned or to be owned by UCM.

"7. On or about October 17, 1972 defendant loaned UCM the sum of $4,200,000.00 on the security of a mortgage dated October 17, 1972 relating to real and personal property owned by UCM and located in the Township of Meridian, County of Ingham, State of Michigan. Thereafter on March 18, 1975 defendant loaned an additional $1,229,782.70 to UCM on the security of the earlier mortgage and of a further mortgage dated March 18, 1975 also relating to real and personal property owned by UCM and located in the Township of Meridian.

"8. The real and personal property to which defen-

dant's mortgages relate is property used by UCM in operating the Burcham Hills Retirement Center. UCM depends on earnings from Burcham Hills to make payments on its mortgage indebtedness to defendant and to pay amounts owing on the debentures held by plaintiffs and the other debenture holders.

"9. When they purchased their debentures plaintiffs were unaware that defendant in acting as trustee under the indenture for the benefit and advantage of the debenture holders was also a secured creditor of UCM in its own right, or that its secured claim was a claim to which payment of the debentures was subordinated.

"10. Defendant, as trustee for the debenture holders, owed plaintiffs and the other debenture holders a general duty of loyalty, which required defendant at all times to act for the benefit and advantage of the debenture holders, notwithstanding that such action might adversely affect defendant's own interests as a secured creditor of UCM.

"11. Notwithstanding its duty to act for the advantage and benefit of the debenture holders, defendant, on or about February 13, 1976, began a suit in the Circuit Court for the County of Ingham, file No. 76-18506-CH, to foreclose the mortgages taken from UCM with respect to the Burcham Hills property.

"12. In order to forestall the foreclosure suit brought by defendant, UCM was forced to commence a proceeding under Chapter XI of the Bankruptcy Act, 11 USC 701 *et seq.* * * *. As a result of the petition filed by UCM in that case, defendant's foreclosure suit has been temporarily stayed.

"13. UCM's indebtedness to defendant secured by the Burcham Hills mortgages now exceeds $5,300,000.00. UCM's assets are not sufficient to satisfy its indebtedness to defendant and thereafter to pay plaintiffs, the other debenture holders and other creditors of UCM.

"14. Notwithstanding that defendant resigned as trustee effective March 1, 1976, defendant owes the debenture holders a continuing duty to refrain from any action that would adversely affect their interests as debenture holders."

It is apparent from the foregoing that plaintiff's claim is that defendant's dual role as trustee and mortgagee was per se improper. Plaintiff alleges no fraud, bad faith, or other wilful misconduct. The question presented is one of first impression in Michigan. We note that defendant's conduct here would have been proper under the Trust Indenture Act of 1939, 15 USC 77aaa *et seq.* 15 USC 77kkk provides in part:

"(a) Subject to the provisions of subsection (b) of this section, the indenture to be qualified shall provide that if the indenture trustee shall be, or shall become, a creditor, directly or indirectly, secured or unsecured, of an obligor upon the indenture securities, within four months prior to a default as defined in the last paragraph of this subsection, or subsequent to such a default, then, unless and until such default shall be cured, such trustee shall set apart and hold in a special account for the benefit of the trustee individually and the indenture security holders—

"(1) an amount equal to any and all reductions in the amount due and owing upon any claim as such creditor in respect of principal or interest, effected after the beginning of such four months' period and valid as against such obligor and its other creditors, except any such reduction resulting from the receipt or disposition of any property described in paragraph (2) of this subsection, or from the exercise of any right of setoff which the trustee could have exercised if a petition in bankruptcy had been filed by or against such obligor upon the date of such default; and

"(2) all property received in respect of any claim as such creditor, either as security therefor, or in satisfaction or composition thereof, or otherwise, after the beginning of such four months' period, or an amount equal to the proceeds of any such property, if disposed of, subject, however, to the rights, if any, of such obligor and its other creditors in such property or such proceeds.

"Nothing herein contained shall affect the right of the indenture trustee—

"(A) to retain for its own account (i) payments made on account of any such claim by any person (other than such obligor) who is liable thereon, and (ii) the proceeds of the bona fide sale of any such claim by the trustee to a third person, and (iii) distributions made in cash, securities, or other property in respect of claims filed against such obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law;

"(B) to realize, for its own account, upon any property held by it as security for any such claim, if such property was so held prior to the beginning of such four months' period * * *."

See also *Morris v Cantor,* 390 F Supp 817, 823 (SD NY, 1975):

"[T]he mere existence or creation of a dual relationship, as trustee under the indenture and as preferred creditor of the obligor on the bonds, although there may be an inherent conflict of interest, does not of itself constitute a violation of § 77ooo(d). Congress specifically dealt with this inherent conflict when drafting the bill, in such a way as to permit it, with certain named protections for the interests of the bondholders."

The parties agree, however, that the federal statute is not controlling because the transaction at issue here was not registered or required to be registered under federal law. Plaintiff relies for a definition of defendant's common-law duties on certain cases involving controversies which predated the federal statute. See *Marshall v Ilsley Bank v Guaranty Investment Co,* 213 Wis 415; 250 NW 862 (1933), *York v Guaranty Trust Co of NY,* 143 F2d 503 (CA 2, 1944), *rev'd on other grounds* 326 US 99; 65 S Ct 1464; 89 L Ed 2079 (1945), *Dudley v Mealey,* 147 F2d 268 (CA 2, 1945), and *Dabney v Chase Nat'l Bank of City of New York,* 196 F2d 668 (CA 2, 1952). In none of these cases

was the trustee held liable because of the mere existence or creation of a dual relationship as trustee and as preferred creditor. Compare *Michigan Trust Co v Luton,* 267 Mich 547, 554-555; 255 NW 351 (1934), in which plaintiff trust company was the management trustee of certain real property and made a loan to the beneficial owners secured by a mortgage on the property. Plaintiff sought to foreclose the mortgage, and the Court held:

"We have scrutinized with care plaintiff's entire action, and are unable to find any fraud therein. This is not the case of a purchase by the trustee of the trust property from himself, at his own sale. The entire transaction was initiated voluntarily by defendants, for their own advantage. When defendants were seeking a loan it was not at all unnatural for them to go to the trust company, which was acting as manager of their property, and which made mortgage loans in the ordinary course of its business. While it might have been better policy had plaintiff refused to make the loan while acting as trustee, it cannot be said that the trust company did not act in good faith in thus accommodating defendants at their own request. No fraudulent conduct is shown on the part of the trust company either prior or subsequent to the making of the loan.

"We believe, however, that plaintiff should have resigned its position as managing trustee when it became necessary for it, in another capacity, to assume a hostile position against the defendants. When a resort to foreclosure became advisable, the trust company found itself in the position of owing two conflicting duties. On the one hand, on behalf of the note holders, it was interested in purchasing the property for as small an expenditure as it might be obliged to pay; on the other hand, as manager of defendants' property, it should have been interested in obtaining as high a price as possible at the foreclosure sale. Under such circumstances the trust company could not efficiently serve two masters, and should therefore have extricated itself

from its inconsistent position before attempting to foreclose the mortgage."

See also *York, supra,* 512-513:

"The defendant, in October 1930, although not legally obligated to do so, become *[sic]* one of the group of lending banks. As a consequence, if the process of purchasing notes, begun in 1931, continued, the defendant, as one of the lending banks was sure to receive a substantial financial benefit through the payment by Vaness of at least $7,500,000 on the precarious loan to it made by those banks. The defendant, therefore, occupied a dual position: If it failed to take steps, using its powers as trustee, to protect the noteholders by stopping that process of note-buying, the defendant would certainly reap a marked advantage. In such circumstances, as we shall see, the exculpatory clauses of the Indenture could not serve as a shield from liability to noteholders who sustained a loss because of its failure to take such steps. Nor would the trustee be protected because it came to occupy that dual position (through its participation in the October 1930 bank loan) in all good faith, for the best of motives, and with no expectation that sharp conflict would ever arise between the best interests of the noteholders and its own self-interest. Once that conflict occurred, defendant had the obligation either to disregard what might serve its self-interest *or to resign as trustee.*" (Emphasis added.)

Plaintiff's complaint indicates that defendant's resignation took effect on March 1, 1976, shortly after commencement of its action to foreclose the mortgages. However, nothing in plaintiff's complaint suggests that plaintiff was damaged by the brief delay in resignation. Compare *Michigan Trust Co v Luton, supra,* 555, in which defendant beneficial owners lost the benefit of a moratorium statute while plaintiff trust company was still their trustee. In this connection we note that a copy of the trust indenture agreement was attached to plaintiff's complaint and incorporated by reference therein. The agreement allows resigna-

tion of the trustee only when the trustee gives notice of its resignation at least 60 days prior to the time when the resignation takes effect. Thus, for defendant's resignation to take effect on March 1, 1976, as plaintiff's complaint states, defendant must have given notice of the resignation well before commencement of the foreclosure action on February 13, 1976.

Our refusal to premise liability on the mere existence of a dual relationship finds support in public policy. The actions by defendant of which plaintiff complains are no different than the actions which would have been taken had plaintiff's creditor been someone who was not their trustee. There was no claim that defendant's actions as creditor were affected by its status as trustee. We see no advantage to a rule which gives debtors a windfall because of the fortuitous circumstance that their creditor is also their trustee. On the contrary, serious disadvantages resulting from such a rule can be foreseen. See Obrzut, *The Trust Indenture Act of 1939: The Corporate Trustee as Creditor,* 24 UCLA L Rev 131, 155 (1976):

"The law which governs the actions of the trustee-creditor should not be so harsh as to have a chilling effect on the institution of the trust indenture. Otherwise, significant interference with the normal business of banks may occur, and a point of diminishing returns will quickly be reached. Additionally, there might be substantial detriment to bank shareholders and depositors among the general public. Increased liability incident to an unnecessarily severe conception of the trustee's responsibilities would discourage financial institutions of integrity from becoming indenture trustees; they would prefer instead to assume the role of creditor. Finally, a much higher rate of compensation for those still willing to act as indenture trustees would result." (Footnotes omitted.)

Affirmed.