MILTON POLLACK, Senior District Judge:
 

 The history of this controversy is somewhat unusual.
 

 Reuben E. Gross obtained a judgment on October 24, 1977 against Lucio F. Russo for attorney’s fees arising from services he had rendered to Russo in a defamation ease. Prior to the time that the judgment was obtained, but found to be in contemplation thereof, Russo and his wife transferred and conveyed all their rights, title, and interest in a piece of real estate on Staten Island, which they owned as tenants by the entirety, to Mrs. Russo alone. Avery Gross, acting as attorney for his father, Reuben, was unsuccessful in subjecting the Staten Island property to the judgment because of the transfer of title mentioned. Gross commenced proceedings in state court to set aside the conveyance of the property as fraudulent, but those proceedings were abruptly halted and stayed as a result of the filing of a voluntary petition in bankruptcy by Russo on January 5, 1978.
 

 On January 19, 1978, Reuben E. Gross filed his proof of claim as an unsecured creditor in the bankruptcy, and at the first meeting of creditors, at which he was the only creditor present, he elected his son, Avery, to serve as trustee.
 

 Later in 1978, Reuben E. Gross died. His will provided that his son, Avery, serve as primary executor of his estate and named him as a direct and residuary legatee. One of the assets of the Gross Estate was, of course, the judgment of Gross against Russo.
 

 As Russo’s trustee in bankruptcy, Avery Gross instituted proceedings to set aside the transfer of the Staten Island realty to Mrs. Russo, and was successful in obtaining a ruling from the Bankruptcy Court that the conveyance was “null and void as against the trustee,” and that the interest therefore had passed to the bankrupt’s estate. The Bankruptcy Judge ordered that Mrs. Russo reconvey the Staten Island property to Lucio F. Russo and herself and that the tenancy by the entirety be thus restored. The deed was ultimately delivered in or about August, 1981.
 

 In the meantime, on June 15,1981, Russo had initiated a proceeding in the Bankruptcy Court demanding that Gross be removed as trustee because of his conflicting interests — as executor of his father’s estate, as principal residuary legatee of that estate, and as trustee of Russo in bankruptcy. As a result, Gross was removed as bankruptcy trustee, 18 B.R. 257 (Bkrtcy.N.Y.). John S. Pereira was appointed on March 25, 1982 as successor trustee in bankruptcy to administer Russo’s estate.
 

 Thereafter, Mrs. Russo offered Pereira $2,500 for the survivorship interest in the Staten Island property. Pereira applied to the court to conduct a hearing on the offer to see if higher or better offers might be obtained. Notice of sale was sent to all creditors, and a sale was conducted by the Bankruptcy Judge at which only Mrs. Russo and Avery Gross were present to bid. During that proceeding, Mrs. Russo’s attorney urged that Avery Gross be disqualified from bidding since he had previously been the trustee who had been removed for cause. The Judge allowed the bidding to proceed, but granted the request to maintain the status quo with regard to any transfer of the realty interest and granted permission to make a motion to vacate the sale and to declare Gross disqualified from bidding for the property.
 

 The highest bid, of $27,500, was made by Gross. Mrs. Russo made the next highest
 
 *241
 
 bid, of $27,000. Gross became the purchaser and made the deposit on account of the price. An order was signed on September 17, 1982 by Conrad B. Duberstein, Bankruptcy Judge, acting for Judge Price, confirming the sale to Avery Gross.
 

 On September 10, 1982, Mrs. Russo had made a motion returnable before the Bankruptcy Judge to declare the sale to Gross void; to approve her offer to buy the interest for $2,500 or to declare Avery Gross and the Gross Estate disqualified from bidding at any subsequent auction; and to stay any transfer of title pending a decision on the motion. At the hearing on the motion to set aside the sale, Gross testified that he had bid for the property interest on behalf of his father’s estate. The trustee took no position on Gross’s qualification to bid, but contended that if Gross were disqualified from bidding on the property as a matter of law, the Court should approve the bid made on behalf of Mrs. Russo at the auction, in the sum of $27,000.
 

 The Bankruptcy Judge, 37 B.R. 441 (Bkrtcy.N.Y.) phrased the matter before him as follows:
 

 “The only issue to be decided here is whether Gross should be disqualified for having been the former trustee in bankruptcy for the bankrupt’s estate.”
 

 The Bankruptcy Judge ruled that the law requires that fiduciaries and
 
 former
 
 fiduciaries be disqualified from bidding at the sale of bankruptcy assets. He ruled that “[t]he law requiring disqualification extends to
 
 former
 
 trustees in order to assure the appearance of propriety and the just administration of the courts and the estate.” (emphasis in the original). He further held that
 

 “it does not matter that Gross did not exploit his prior relationship; that he gave good consideration; that he purchased the survivorship interest without the intention to speculate on it, or that other creditors would benefit from a sale to him. For that matter, it is even irrelevant that Gross was discharged from his former position because of conflicts of interest between his duties as trustee and his obligations as executor of his father’s estate; ... Gross would have to be disqualified even if he had not been removed for cause.”
 

 The Bankruptcy Judge went on to say, “More importantly, however, it does not matter in what capacity he made the bid since the public policy against allowing former trustees to purchase assets of estates for which they have served, precludes sales to former trustees acting as agents for creditors or other buyers at such sales.”
 

 Those rulings of law were erroneous. The law does not require, as a
 
 per se
 
 rule, such a result. In affirming the order of the Bankruptcy Judge on his opinion, the District Judge, Eugene H. Nickerson was likewise in error.
 

 Discussion
 

 The rule of law disqualifying a present trustee from purchasing assets of an estate in which he serves is not automatically applicable to a former fiduciary. No provisions of the Bankruptcy Code directly address this matter. However, criminal sanctions are provided in the Bankruptcy Chapter of the Code of Crimes and Criminal Procedure, 18 U.S.C. § 154, which make it unlawful for a present trustee to purchase the property of the estate:
 

 “Whoever, being a custodian, trustee, marshal, or other officer of the court, knowingly purchases, directly or indirectly any property of the estate of which he is such officer in a case under Title 11 ... [s]hall be fined not more than $500, and shall forfeit his office.”
 

 However, nothing in that statute refers to
 
 past
 
 trustees.
 

 The reasons generally assigned for disqualifying present fiduciaries from purchasing the assets of an estate do not support a
 
 per se
 
 disqualification of a former trustee. Generally, courts have disqualified present fiduciaries to avoid unfairness, the improper use of confidential information, or the appearance of impropriety.
 

 The Court of Appeals, Second Circuit, in
 
 In re Frazin & Oppenheim,
 
 181 Fed. 307,
 
 *242
 
 310 (2d Cir.1910), disqualified an appraiser, a fiduciary, from purchasing the property he had appraised because he “necessarily obtain[ed] confidential information concerning the cost of the property ... and concerning many other matters affecting its value and the price to be obtained for it.” The Court specifically left open the question of whether a former fiduciary “could become the purchaser of .the property
 
 of
 
 the estate_”
 
 Id.
 
 at 311.
 

 Following this Circuit, the Ninth Circuit has stated: “A fiduciary cannot purchase property which he is empowered to sell” because his actions may be “tainted with the possibility of unfairness or of conflict between personal desires and trust obligations.”
 
 Donovan & Schuenke v. Sampsell, 226 F.2d 804,
 
 811 (9th Cir.),
 
 cert. denied sub nom., Freedman v. Donovan & Schuenke,
 
 350 U.S. 895, 76 S.Ct. 152, 100 L.Ed. 787 (1955).
 
 See also In re Stephens & Co.,
 
 30 F.2d 725, 726 (S.D.Cal.1928). The authors of the leading treatise make the same point: “Reasons behind the establishment of the loyalty rule by equity are that it is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction.” G. Bogert & G. Bogert,
 
 The Law of Trusts & Trustees
 
 § 543, at 204-05 (rev. 2d ed. 1978). However, as the Ninth Circuit recently has pointed out, the considerations with regard to a former fiduciary are not necessarily the same.
 
 See In re Exennium, Inc.,
 
 715 F.2d 1401, 1404 n. 5 (9th Cir.1983).
 

 This Court has noted that the rule prohibiting purchase of assets' of a bankrupt estate by a trustee is not necessarily applicable to all who are denominated as fiduciaries. “[T]o say that a man is a fiduciary only begins analysis; it gives direction to further inquiry.”
 
 In re Beck Industries, Inc.,
 
 605 F.2d 624, 634 (2d Cir.1979),
 
 quoting SEC v. Chenery,
 
 318 U.S. 80, 85-86, 63 S.Ct. 454, 458-459, 87 L.Ed. 626 (1943).
 

 In
 
 Beck Industries,
 
 one Ross, a highly positioned employee of the Debtor and later of the trustee, was held to have some “fiduciary” obligations. He also held a court-sanctioned preemptive right of first refusal of any sale of a
 
 part
 
 of the Debt- or’s properties to be auctioned. Ross had entered into a joint venture agreement with another purchaser to acquire
 
 all
 
 the property to be auctioned but had not disclosed that arrangement to the trustee who claimed, when he learned of it, that it had chilled the bidding. After a trial, the Bankruptcy Judge directed that the sale to Ross be closed. On appeal, the District Judge reversed the Bankruptcy Judge but saw no reason to disqualify Ross from further bidding at a new sale. On appeal to this Court, the judgment setting aside the sale was affirmed and the order denying disqualification of Ross from bidding also was affirmed with certain conditions.
 

 In ordering a new auction, the Court explained that the fault lay in the non-disclosure and that the employee’s association did not bar him from bidding on the property in the future, because “our objective is to maximize the bidding, not to restrict it.”
 
 Id.
 
 at 637. The Court distinguished the absolute disqualification in
 
 Donovan & Schuenke,
 
 226 F.2d 804, by noting that “[i]n that case the [disqualified] purchaser, a former president of the bankrupt, had certain duties in connection with selling the bankrupt’s property and was not the holder of a court-sanctioned preemptive right.”
 
 Id.
 
 at 635.
 
 See also In re Rex Body Corp.,
 
 138 F.2d 912, 913 (2d Cir.1943) (even directors of a debtor were permitted to become purchasers of property; it was found that the sale “was the best one available”).
 

 Although a former trustee may have some residua] fiduciary obligations, he is not subject to the same automatic disqualification as a present trustee: a former trustee may or may not be in an inherently conflicting position and may or may not possess confidential information which gives him an unfair advantage as a bidder. Factual inquiry is needed; a former trustee is not barred,
 
 per se,
 
 from becoming a purchaser of assets of the bankruptcy estate.
 

 
 *243
 
 In general,
 

 “The trustee can properly purchase trust property after the termination of the trust or after he has ceased to be trustee if he does not take advantage of the beneficiary by the use of information acquired by him as trustee or otherwise take advantage of his former position as trustee.”
 

 Restatement (Second) of Trusts § 170 comment g (1959).
 
 See also
 
 G. Bogert & G. Bogert,
 
 supra,
 
 § 543(C), at 253; 2
 
 Scott on Trusts
 
 § 170.8 (3d ed. 1967).
 

 In this case, there has been no suggestion in the opinions below of any fraud or unfair dealing. However, a factual record should be established. Since a “bankruptcy court sits as a court of equity,”
 
 Beck Industries,
 
 605 F.2d at 634, it is of course appropriate for the court to consider whether the former fiduciary’s bid or purchase tainted the proceedings with wrongdoing,
 
 cf. Donovan & Schuenke,
 
 226 F.2d at 811, or stifled competition for the asset,
 
 see Beck Industries,
 
 605 F.2d at 636, or whether the former fiduciary promulgated any impropriety,
 
 see Mintiner v. Michigan Nat’l Bank,
 
 117 Mich.App. 633, 324 N.W.2d 110 (Mich.Ct.App.1982);
 
 Tognazzini v. Tognazzini,
 
 125 Cal.App.2d 679, 271 P.2d 77, 85 (Cal.Dist.Ct.App.1954). The integrity of the sale is the issue to be addressed — not any general past conduct of a bidder in relation to other matters.
 

 Neither the former trustee nor the creditor estate represented by its executor fall under any
 
 per se
 
 ban as bidders for the assets of the bankruptcy estate. The circumstances of this case militate in favor of a careful balancing of the equities. When Gross served as trustee his allegiance was to the estate’s creditors and not to Mrs. Russo. Neither the current trustee nor the other creditors have voiced any objections to Gross’s participation in the sale of the estate’s property interest. The Bankruptcy Court should be afforded the opportunity to determine whether there is a meaningful possibility that Gross would be taking unfair advantage of confidential information he possesses by virtue of his earlier role as trustee. The inquiry should, in the first instance, be directed to the sale already had to determine whether there was any impropriety on the part of Avery Gross in bidding at that sale.
 

 We therefore reverse and remand for proceedings not inconsistent with this opinion.