794 P.2d 641

Lynn STEVENSON,
Plaintiff–Appellant,

and

Sun Valley Ranches, Inc., an Idaho corporation, Plaintiff–Appellant,

v.

PRAIRIE POWER COOPERATIVE, INC., Defendant–Respondent.

Nos. 17255, 17327 and 17350.

Court of Appeals of Idaho.

Sept. 20, 1989.

Review Granted Dec. 13, 1989.

C. Thomas Arkoosh, Roden, Welch, Arkoosh, Riceci & French, Boise, for plaintiffs-appellants.

Carolyn M. Minder, Nelson, Rosholt, Robertson, Tolman & Tucker, Boise, for defendant-respondent.

WALTERS, Chief Judge.

These consolidated appeals [1] arose because the appellants, Lynn Stevenson (Stevenson) and Sun Valley Ranches, Inc. (Sun Valley) did not conform to a Prairie Power Cooperative (Prairie Power) policy establishing a method to assure payment by its irrigator/members of their annual electric bills in advance of the irrigation season. In case 17327, Stevenson contends that, because the policy is unreasonable, he is entitled to damages for Prairie Power's failure to supply him with electricity. In case 17255, Stevenson challenges an award of costs and fees assessed against him by the district court. In case 17350, Sun Valley argues that the district court erred in dismissing—on jurisdictional grounds—its action against Prairie Power for damages due to the co-op's refusal to accept a crop lien in lieu of an advance guarantee of payment of Sun Valley's electricity bill. With regard to Stevenson, we conclude that the policy is enforceable, and we affirm the district court's summary judgment dismissing his claim. However, we find error in the award of costs made in that case and we remand the case for further proceedings on that question. We further conclude that the district court had jurisdiction to address Sun Valley's claim for damages. We therefore vacate the district court's summary judgment dismissing Sun Valley's claim, and we remand that case for further proceedings as well.

## I.  FACTS

Prairie Power is an Idaho corporation, formed under authority of the Rural Electrification Act, 7 U.S.C.A. 901 et seq., for

---

1.  By interim order we simplified the caption of this appeal to include only the parties participat- ing in each of the consolidated cases on appeal.

the purpose of providing its members with electrical power. Stevenson and Sun Valley are members of the co-op. Their primary use of power is for farm irrigation. In 1984, approximately 44% of Prairie Power's electrical output was used to run irrigation systems for nineteen irrigator/members.

In the spring of 1984, the Board of Directors (Board) of Prairie Power adopted Policy No. 41 (policy), in an effort to insure prompt payment of its irrigators' electric bills. The policy stated:

> The Board has determined, because of the difficulty with the irrigation accounts, it will request from all the irrigators this year either a letter of credit or some other notification from a lending institution or similar type of organization that the irrigator has financial ability to pay the season's irrigation bill. The amount in the letter should be the average of the last three years' power usage. The Board is also requesting that the letter be submitted and accepted by Prairie Power at least thirty (30) days prior to the turn on of power for irrigating purposes.

All irrigators were notified of the new policy. The notice further stated that the new policy was intended to relieve a "cash flow" problem being experienced by the co-op, and that the "policy [was] not designed to pose a hardship upon anybody and the Board feels it is flexible enough to allow different types of arrangements for the different irrigators who finance differently." Irrigators were given the option of prepaying their entire season's irrigation bill prior to the beginning of the irrigation season. Of the nineteen irrigation members, only Stevenson and Sun Valley sought to assure payment of their irrigation bills by a method other than that outlined in the policy.

## A. Stevenson

After learning of the new policy, Stevenson attempted to personally guarantee payment of his irrigation bill. Stevenson contends that, upon visiting the Prairie Power office, a staff member told him that a personal guarantee was "all I needed." However, Stevenson was later informed that a personal guarantee would not fulfill the co-op's policy. Stevenson subsequently attempted to negotiate an alternative payment strategy with Prairie Power's attorney. However, several proposals agreed to by Stevenson and the attorney were rejected by the Board. Stevenson later initiated this action, seeking damages to his crops due to Prairie Power's failure to provide him with adequate power to operate his irrigation system during the 1984 growing season. On cross-motions for summary judgment, the district court held in favor of Prairie Power, concluding that the policy was adopted for a reasonable purpose and was not "arbitrary or discriminatory." From the district court's judgment, Stevenson appealed.

## B. Sun Valley

At the time Prairie Power initiated its new policy, Sun Valley was a debtor involved in Chapter 11 proceedings in the United States Bankruptcy Court for the District of Idaho. As part of those proceedings, the bankruptcy trustee permitted Sun Valley to plant crops during the 1984 growing season in an effort to satisfy some of its existing debts. In April, 1984, Prairie Power petitioned the bankruptcy court for an order requiring Sun Valley to post a $30,000 bond to insure payment of its existing debt, and to insure payment of its 1984 irrigation bill. The bankruptcy court initially issued an order in May, 1984, granting the co-op's request (first order), but subsequently reversed itself after a rehearing and entered a second order requiring Prairie Power to accept a first lien position on Sun Valley's 1984 crops.[2] However, upon Sun Valley's request for power service, Prairie Power ignored the bankruptcy court's second order, insisting that the bond be posted. In May, 1986, Sun Valley

---

**2.** The bankruptcy court's second order was subsequently reversed in September, 1985, giving Prairie Power the status of an "administrative claimant" with respect to proceeds of Sun Valley's 1984 grain crop.

filed a claim in state district court, alleging damages to its 1984 crop due to Prairie Power's refusal to supply electric power for its irrigation pumps. Pursuant to Prairie Power's motion for summary judgment, the district court concluded that it lacked jurisdiction to consider a claim involving an alleged violation of the bankruptcy court's second order. This appeal followed.

## II. STANDARD OF REVIEW

■ We first note our standard of review of the district court's summary judgment in both the Stevenson and Sun Valley cases. Such a motion is proper if, based upon the pleadings, depositions, affidavits and admissions on file, there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). Generally, the party opposing summary judgment is entitled to favorable inferences from the underlying facts. However, where opposing parties both move for summary judgment on the same evidentiary facts and on the same issues and theories, the parties effectively have stipulated that there is no genuine issue of material fact. Accordingly, we will accept the judge's factual determinations based upon the record. Upon questions of law, we will exercise free review.

## III. STEVENSON'S CLAIM

We first address Stevenson's claim that Prairie Power's policy of requiring advance assurance of payment for his entire season's irrigation bill is unreasonable. Stevenson asserts that because he is self-financed, the policy essentially requires him to prepay his entire irrigation bill before the beginning of the season. Stevenson contends that such a policy poses a financial hardship for irrigators, such as himself, who cannot easily obtain letters of credit from lending institutions or who have no alternative source of power. Although Stevenson recognizes that rural electrical co-ops such as Prairie Power are not governed by a statutory "rule of reasonableness," I.C. § 61–301, applicable to rate changes proposed by public utilities, he asserts that such a policy is at least

implied within the relationship between the co-op and its members—a relationship which Stevenson claims other jurisdictions have found to preclude a prepayment policy. See, e.g., Howe v. Big Horn Electric Cooperative, Inc., 206 Mont. 297, 670 P.2d 936 (1983) (case remanded for determination of whether policy of allowing disconnection of power for nonpayment of previous user's delinquent bill was reasonable). Furthermore, Stevenson submits that determining whether the policy was reasonable is a question of fact for the jury to decide; therefore, the district court erred in granting summary judgment.

We disagree with Stevenson's contentions. The present situation is governed by our recent opinion in First Federal Savings and Loan Association of Twin Falls v. East End Mutual Electric Co., Ltd., 112 Idaho 762, 735 P.2d 1073 (Ct.App.1987). In that case we considered whether the by-laws of a private electrical co-op may require, as a condition of transferring membership from one person to another, the payment of any delinquency in the outgoing member's account. In our opinion we noted that, under Idaho law, nonprofit co-ops are not regulated to the same extent as public utilities. Because rural electrical co-ops had been omitted from state regulatory control, we concluded that such organizations merited a lesser degree of public intrusion upon their freedom to contract with their members. We therefore held that the co-op could adopt such a policy, or any other regulations governing membership or the suspension or resumption of services, so long as such restraints were not arbitrary and did not infringe upon a fundamental public policy such as nondiscrimination. Id. at 767, 735 P.2d at 1078.

■ In the present case we hold that Prairie Power's policy was neither arbitrary nor contrary to a fundamental public policy, and is therefore enforceable. The policy serves the purpose of avoiding nonpayment of irrigation accounts by requiring irrigators to obtain some suitable form of assurance that their irrigation bill will be paid. We find nothing arbitrary with this approach. Furthermore, we can find

no fundamental public policy that is abridged by requiring irrigation power users to assure payment of their bills in advance of the growing season. Although Stevenson argues that making him prepay his yearly bill the policy is patently unreasonable, we note that the policy does not require prepayment—only an *assurance* from a lending institution or similar organization that Stevenson has the ability to pay. Stevenson's failure to avail himself of this alternative does not mean that the policy is unreasonable.

■ Furthermore, we do not agree with Stevenson's contention that the policy is unreasonable because it does not take account of every possible method of accomplishing the co-op's objectives. Stevenson contends that Prairie Power could accomplish the same goal by accepting crop liens in lieu of bank assurances of payment, thus eliminating the irrigator's need to prepay or arrange financing. This alternative may have merit; however, it is not our function to determine whether the co-op has adopted the best possible policy; we need only decide whether the co-op's approach was arbitrary. Having found that it is not, we decline to address whether such a policy could be "improved" upon appeal.

Likewise, we find no evidence in the record suggesting that Prairie Power adopted the policy even though no irrigators were delinquent with their payments. To the contrary, our review of the co-op's financial records of irrigation members reveals that many members were delinquent with their accounts following the 1983 growing season.

Finally, we reject Stevenson's contention that a genuine issue of fact exists as to whether Prairie Power's attorney had authority to negotiate a settlement regarding Stevenson's bill, thus precluding the district court from granting summary judgment to the co-op. In this regard, the district court concluded that while "counsel for Prairie Power may have engaged in what can at least be termed negotiations with *Lynn Stevenson* regarding the 'turning on' of his irrigation pumps, he was not empowered to change or modify 'Policy 41'

to the advantage of one member of the cooperative." Referring to an affidavit from the attorney, the court further noted that the attorney never communicated to Stevenson that he did in fact have authority to so change or modify the policy. It appears from the facts presented in the parties' pleadings that any negotiated agreements between Stevenson and Prairie Power's attorney were ultimately rejected by the Board. We hold that the district court correctly concluded that no genuine issue of disputed fact existed with respect to the attorney's lack of authority to reach a binding compromise agreement for payment of electrical services. The district court's summary judgment in favor of Prairie Power is therefore affirmed.

## IV. SUN VALLEY'S CLAIM

We now address Sun Valley's contention that the district court should have entertained the merits of its claim for damages. Sun Valley submits that the district court had jurisdiction to hear its damage claim arising from Prairie Power's refusal to supply power because the basis for its action was a contractual dispute of the type usually adjudicated in state courts. In contrast, Prairie Power points out that Sun Valley's claim is premised upon the co-op's alleged failure to supply electrical power pursuant to the bankruptcy court's second order. Therefore, Prairie Power submits that, during the bankruptcy proceedings, the bankruptcy court had exclusive jurisdiction to hear and decide any violation of its order which would affect Sun Valley's bankruptcy estate.

■ On appeal, Sun Valley asks us to interpret the jurisdictional authority of the federal bankruptcy courts, a question of law upon which we will exercise free review. Because Sun Valley's claim arose in 1986, we deem it appropriate to apply the jurisdictional requirements applicable at that time pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, Title I § 101(a), 98 STAT. 333 (1984). Those amendments, enacted in response to the United States Supreme Court's decision in *Northern Pipe-*

**57**

line *Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982),[3] vest federal courts[4] with "original and exclusive" jurisdiction of all bankruptcy cases under Title 11. 28 U.S.C.A. § 1334(a); 1 COLLIER ON BANKRUPTCY ¶ 3.01[1][c][i] (15th ed. 1989) (hereinafter *Collier*). Generally, the district court's original *and exclusive* jurisdiction extends only to matters involving the debtor's bankruptcy petition. *Matter of Wood,* 825 F.2d 90 (5th Cir.1987). However, a different jurisdictional rule arises for civil proceedings which are in some way related to the bankruptcy petition. Under 28 U.S.C.A. § 1334(b), federal district courts enjoy original, *but not exclusive,* jurisdiction for all civil proceedings arising under, or arising in or related to, bankruptcy proceedings. *See Collier,* ¶ 3.01[1][c][ii]. Although not specified in the statute, several states have concluded that they share concurrent jurisdiction with federal courts regarding these matters. *Coons v. Peterson Realty, Inc.,* 695 P.2d 317 (Colo.App. 1985) (discussing 28 U.S.C. §§ 1471(b), –1478(a), forerunners of the present statute—plaintiff entitled to pursue action against debtor in state court); *Picker v. Rollins Leasing Corporation,* 97 Or.App. 164, 776 P.2d 1 (1989) (state action for lost wages); *Bill Walker & Associates, Inc. v. Parrish,* 770 S.W.2d 764 (Tenn.App.1989) (state action against agent of debtor); *Utah Farm Production Credit Ass'n v. Labrum,* 762 P.2d 1070 (Utah 1988) (state contempt proceeding against debtor's attorney); *see* Note, *Jurisdiction Under the Bankruptcy Amendments of 1984: Summing Up the Factors,* 22 TULSA L. JOUR. 167, 181 n. 97 (1986). In the *Bill Walker* case, the Tennessee Court of Appeals recognized that nothing in 28 U.S.C. § 1334(b) prevents a state court from exercising jurisdiction over state law claims against an officer of a corporate debtor. 770 S.W.2d at 768. The court concluded that federal

courts customarily decline to assert jurisdiction over a party's claim when the claim will not have a significant impact on the bankruptcy proceeding. *Id.;* citing *In re Rustic Manufacturing, Inc.,* 55 B.R. 25, 29–30 (Bkrtcy.W.D.Wisc.1985).

We agree with the Tennessee Court of Appeals' reasoning in *Bill Walker,* and hold that Idaho state courts enjoy concurrent jurisdiction with federal courts to adjudiciate proceedings falling under 28 U.S.C.A. § 1334(b). In the present case, we conclude that Sun Valley's claim was a matter over which the bankruptcy court had only concurrent jurisdiction with the state court. In its complaint, Sun Valley alleged that Prairie Power had a duty to supply electrical power and deliberately failed to do so, thus causing damages to the irrigator's crops. The complaint asserts, in essence, a breach of contract claim for Prairie Power's failure to provide Sun Valley with adequate power to operate its irrigation system. The complaint does not specifically aver that Prairie Power had violated a bankruptcy court order; rather, it alleges damages arising from Prairie Power's refusal to supply power for the 1984 irrigation season. Although Prairie Power asserts that only the bankruptcy court had jurisdiction to hear and decide questions arising from interpretation of its own orders, we conclude that, given the nature of the parties' contractual relationship, such a claim addresses a question of contract law properly framed for review in either federal or state court, *See First Federal Savings and Loan Association of Twin Falls v. East End Mutual Electric Co., Ltd.,* 112 Idaho 762, 735 P.2d 1073 (Ct.App.1987).

In reaching our conclusion, we do not suggest that the bankruptcy court lacked jurisdiction to adjudicate this matter pursuant to a timely-brought cause of action

---

**3.** The Supreme Court held that certain provisions of the Bankruptcy Act of 1978 were unconstitutional because they conferred Article III judicial power upon Article I bankruptcy judges. The 1984 Act was Congress' attempt to limit the authority of the bankruptcy courts consistent with the *Marathon* decision.

**4.** 28 U.S.C.A. § 1334 deals with the federal district court's broad grant of authority to hear and decide bankruptcy petitions and related matters. 28 U.S.C.A. § 157, addresses the specific jurisdiction of bankruptcy judges pertaining to bankruptcy "core" and "non-core" proceedings.

under § 1334(b). Rather, we emphasize that the bankruptcy court shared original jurisdiction with the district court regarding this matter.[5] Furthermore, we cannot agree with Prairie Power's assertion that, because the bankruptcy court's second order affected Sun Valley's bankruptcy estate, the federal court is vested with exclusive jurisdiction to decide this matter. 28 U.S.C.A. § 1334(d). Sun Valley's claim against Prairie Power only tangentially affects its estate; it does not encompass any of the property included in the estate, but rather serves to determine whether Sun Valley is entitled to damages for Prairie Power's alleged failure to supply power for irrigation during the 1984 growing season. In reaching our conclusion, we voice no opinion as to the merits of Sun Valley's claim, only that it should be permitted to advance its claim in the state district court. We therefore hold that the district court had jurisdiction to consider the merits of Sun Valley's case. The summary judgment in favor of Prairie Power is therefore vacated and the case is remanded for further proceedings.

## V. FEES AND COSTS BELOW

The final issue in this case concerns an award of costs and fees made by the court below. The issue, as framed in the appellants' brief,[6] is "whether Prairie Power was entitled to fees and costs in the trial court." In order to refine this issue, we return to the nature of these appeals. As noted at the outset of this opinion, this proceeding is a consolidation of three appeals. The first was taken by Stevenson from the summary judgment entered against him in favor of Prairie Power Cooperative, Inc. and other individuals named as defendants in the action (all being members of the board of directors of Prairie Power Cooperative Inc.). The second was an appeal by Stevenson from orders awarding costs to Prairie Power and awarding costs and fees to the individually named defendants. The third

is the appeal by Sun Valley Ranches from the dismissal of its action. In the latter action, Prairie Power Cooperative Inc. was the only named defendant, and, in the record of that case, we find no order indicating that the court below awarded any fees or costs to Prairie Power, against Sun Valley Ranches.

It appears that the only orders permitting Prairie Power to recover expenses in this litigation were those entered against the appellant Stevenson pertaining to the second appeal. Also, in one of those orders, an award of fees requested by Prairie Power was denied by the district court. Thus, with respect to that order, we are concerned only with an award of costs. That appeal, however, was also taken from a companion order which awarded fees and costs to the individually named defendants. Therefore, in summary, we shall focus on the awards made against the appellant Stevenson, for fees and costs in favor of the individually named defendants and costs in favor of Prairie Power Cooperative, Inc.

Stevenson poses two generalized arguments against the court's awards. First, he contends that Prairie Power should not have been the prevailing party below. This contention merits no additional discussion. Our affirmance of the summary judgment in that action confirms that Prairie Power, and the individually named defendants, prevailed. Next, Stevenson argues that the district court erred by not making express findings as to the bases for the awards. We agree in part with this argument.

The awards made by the court fall into three categories: (a) attorney fees awarded to the individual defendants; (b) nondiscretionary costs awarded to all defendants; and (c) discretionary costs awarded to all defendants. With respect to the attorney fees award, the court made an express finding that Stevenson's action against the individual board members of Prairie Power was frivolous. The court's findings in this

---

5. On remand, Prairie Power may choose to file a motion with the federal district court to have Sun Valley's bankruptcy proceeding re-opened, and seek removal of this claim to the bankruptcy court for disposition.

6. Pursuant to a stipulation consolidating these cases for presentation on appeal, a single brief was filed on behalf of both appellants.

regard comport with I.R.C.P. 54(e)(1) and 54(e)(2). We find no abuse of discretion in determining that award.

■ With respect to the award of nondiscretionary costs, Stevenson has not demonstrated any error by the court in allowing recovery of those expenses. However, with regard to the award of discretionary costs, made in favor of all defendants, Stevenson has raised a valid issue. A timely objection was made by Stevenson to the defendants' memorandum of costs filed in the district court—questioning whether the claimed costs were reasonable and necessary, and asserting they were exorbitant and unreasonable. Rule 54(d)(1)(D), I.R.C.P., specifies that: "The trial court, in ruling upon objections to such discretionary costs contained in the memorandum of costs, shall make express findings as to why such specific item of discretionary cost should or should not be allowed." Here the district court simply denied Stevenson's objections and, without explanation, awarded the total amounts of the items claimed as discretionary costs. This was in contravention of Rule 54(d)(1)(D). Consequently, we remand to the district court to reconsider its award under the guidelines of that rule.

In summary, we affirm the judgment entered against the appellant Stevenson, but remand for reconsideration of the award of discretionary costs in that case. We vacate the judgment dismissing the action by Sun Valley Ranches, Inc. and remand that case for further proceedings. Each party having prevailed in part in these consolidated appeals, no fees or costs are awarded.

BURNETT, and SWANSTROM, JJ., concur.