**NATIONAL BANK OF ALASKA,
National Banking Association,
Appellants,**

v.

**UNIVENTURES 1231 and State of
Alaska, Department of Admin-
istration, Appellees.**

No. S–4087.

Supreme Court of Alaska.

Jan. 24, 1992.

David Floerchinger and Deirdre D. Ford,
Staley, DeLisio, Cook & Sherry, Inc., An-
chorage, for appellants.

Sally J. Kucko and Rick L. Owen, Groh,
Eggers & Price, Anchorage, for appellees
Univentures 1231.

Jeffrey W. Bush, Asst. Atty. Gen., and
Charles E. Cole, Atty. Gen., Juneau, for
appellee State of Alaska, Dept. of Admin.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS, COMPTON and
MOORE, JJ.

OPINION

MOORE, Justice.

National Bank of Alaska (NBA) brought
an action against the State of Alaska, Uni-
ventures 1231 (Univentures), Charles D.
LeViege, and Lee D. Garcia to recover the
amount which NBA paid on a warrant is-
sued by the state. The superior court held
that the warrant is not a negotiable instru-
ment under the Uniform Commercial Code
as enacted in Alaska, and that NBA there-
fore could not recover as a holder in due
course under the code. NBA appeals. The
sole issue on appeal is whether the superior
court was correct in finding that the state
treasury warrant is a non-negotiable in-
strument under Article III of the Uniform
Commercial Code. We reverse.

I.

The State of Alaska is a tenant in a large
office building which is owned by Univen-
tures. On November 24, 1987, the state
made a lease payment of $28,143.47 to Uni-
ventures with state treasury warrant No.
21045102. Charles LeViege, the managing
partner of Univentures, assigned the war-
rant on behalf of Univentures to Lee Gar-
cia.

As a result of a dispute which arose
among the partners of Univentures, the
state was notified on November 25, 1987
that it should no longer pay Charles
LeViege the monthly rent due the partner-
ship. The state was directed to hold the
rent in abeyance pending the naming of a
court-appointed receiver. On November
27, 1987, the state treasury placed a stop-
payment order on warrant No. 21045102.

Garcia presented the warrant to NBA,
the state's clearing bank, on November 30,
1987. NBA paid Garcia $28,143.47 on the
warrant but did not debit the state's ac-

count because of the stop-payment order. On January 14, 1988, NBA filed an action against the State of Alaska, Charles LeViege, and Lee Garcia, to recover the sum of $28,143.47 which NBA had paid to Lee Garcia in exchange for the warrant. The state deposited an equivalent sum with the court and moved to join Univentures as a party. Samuel and Catherine LeViege answered on behalf of Univentures.

NBA moved for summary judgment claiming that it is a holder in due course under AS 45.03.302(a). NBA argued that the warrant is a negotiable instrument and that it paid the warrant in good faith, without knowledge of facts which would indicate the instrument may not be payable as its terms provide. As such, NBA maintained that it took the warrant free from the defenses presented by Univentures and the state. The state and Univentures opposed NBA's motion, arguing that NBA is not a holder in due course because the warrant is not a negotiable instrument, and because NBA had notice of the stop-payment order when it paid Garcia on the warrant. Univentures filed a cross-motion for summary judgment.

The superior court granted Univentures' cross-motion for summary judgment and denied NBA's motion for summary judgment. Judge Ripley, in ruling for Univentures, specifically found that the warrant is not a negotiable instrument and that NBA

therefore is not a holder in due course. Pursuant to the parties' stipulation, $16,000.00 of the money deposited with the court was immediately disbursed to Univentures and NBA in equal amounts. The court ordered that the remaining $12,143.47 be held by the court pending appeal of the court's determination that the warrant is not negotiable. This appeal followed.

## II.

Article III of the Uniform Commercial Code provides that the holder in due course of an instrument takes the instrument free of all but a very limited class of defenses that the original payor might have against the original payee. AS 45.03.305.[1] The code defines a holder in due course as one who takes a negotiable instrument for value, in good faith, and "without notice that [the instrument] is overdue or has been dishonored or of any defense against or claim to it on the part of any person." AS 45.03.302(a). If a holder of an instrument is not a holder in due course, the holder takes the instrument subject to all valid claims to the instrument, as well as subject to several classes of defenses. AS 45.03.306.[2]

 The superior court held that NBA was not a holder in due course because the state treasury warrant involved is not a negotiable instrument to which the Uni-

---

1. AS 45.03.305 provides:

 To the extent that a holder is a holder in due course the holder takes the instrument free from
 (1) all claims to it on the part of any person; and
 (2) all defenses of any party to the instrument with whom the holder has not dealt except
 (A) infancy, to the extent that it is a defense to a simple contract;
 (B) such other incapacity, or duress, or illegality of the transaction as renders the obligation of the party a nullity;
 (C) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms;
 (D) discharge in solvency proceedings; and
 (E) any other discharge of which the holder has notice when the holder takes the instrument.

2. AS 45.03.306 provides:

 Unless the person has the rights of a holder in due course, a person takes the instrument subject to
 (1) all valid claims to it on the part of any person;
 (2) all defenses of a party which would be available in an action on a simple contract;
 (3) the defenses of want or failure of consideration, nonperformance of a condition precedent, nondelivery, or delivery for a special purpose (AS 45.03.408); and
 (4) the defense that the person or a person through whom the person holds the instrument acquired it by theft, or that payment or satisfaction to the holder would be inconsistent with the terms of a restrictive endorsement; the claim of a third person to the instrument is not otherwise available as a defense to a party liable on the instrument unless the third person personally defends the action for the party.

form Commercial Code applies.[3] As a result, the superior court concluded that NBA took the warrant subject to the state's defense that it had issued a valid stop-payment order pursuant to AS 45.04.-403(a).[4] NBA argues that the warrant is a negotiable instrument, and that NBA is therefore a holder in due course. Whether the warrant is a negotiable instrument is a question of law, which we examine *de novo.* *See Hicklin v. Orbeck,* 565 P.2d 159, 163 n. 6 (Alaska 1977) *rev'd on other grounds,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

■ Alaska Statute 45.03.104(a) provides that for a writing to be a negotiable instrument it must:

(1) be signed by the maker or drawer;

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by this chapter;

(3) be payable on demand or at a definite time, and

(4) be payable to order or to bearer.

Alaska Statute 45.01.102(a) provides that the Code is to be "liberally construed and applied to promote the underlying purposes and policies." The underlying purposes and policies of the Uniform Commercial Code are:

(1) to simplify, clarify, and modernize the law governing commercial transactions;

(2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties;

(3) to make uniform the law among the various jurisdictions.

AS 45.01.102(b).

■ Warrant No. 21045102 satisfies all four elements of the definition of a negotiable instrument. First, the warrant is signed by the maker, Governor Steve Cowper. Second, the warrant contains an unconditional promise or order to pay a sum certain of $28,143.47. A promise or order otherwise unconditional is not made conditional by the fact that the instrument is limited to payment out of a particular fund if the instrument is issued by a government or governmental agency or unit. AS 45.-03.105(a)(7). Third, the warrant is payable at a definite time. Although the warrant states that it "will be deemed paid unless redeemed within two years after the date of issue," AS 45.03.109 provides that an instrument is payable at a definite time if by its terms it is payable on or before a stated date. AS 45.03.109(a)(1). Finally, the warrant clearly indicates that it is payable to the order of Univentures. An "instrument is payable to order if by its terms it is payable to the order or assigns of a person specified in the instrument with reasonable certainty." AS 45.03.110(a). Because the warrant meets the statutory definition in AS 45.03.104, we hold that the warrant is a negotiable instrument.[5]

---

**3.** Univentures argued in its cross-motion for summary judgment that even if the warrant is a negotiable instrument, NBA is not a holder in due course because NBA had notice of the stop-payment order when it paid Garcia on the warrant. Univentures claimed that NBA was given notice of the stop-payment order on November 27, 1987, in its role as the clearing bank for state treasury warrants. The superior court apparently found that NBA did not have knowledge of the stop-payment order when it accepted the warrant, for the final judgment provides that NBA is entitled to the funds on deposit with the court if this court determines warrant No. 21045102 is a negotiable instrument. We do not consider whether NBA had knowledge of the stop-payment order, for that issue is not a stated point on appeal, and was not briefed by either party.

**4.** AS 45.04.403(a) provides:

A customer may, by order to the bank, stop payment of an item payable for the customer's account, but the order must be received at a time and in a manner which afford the bank a reasonable opportunity to act on it before an action by the bank with respect to the item described in AS 45.04.303.

**5.** AS 45.03.104(b) classifies certain writings which satisfy the definition of "negotiable instrument" as drafts, checks, certificates of deposit, and notes. We reject the state's argument that an instrument must fit within one of these categories before it can qualify as a negotiable instrument. Negotiability is determined by the four-pronged test of AS 45.03.104, not by the name affixed to a particular writing. If it were necessary to categorize the warrant at issue in this case, it would be a draft. An instrument is a draft if it is an order. AS 45.03.104(b)(1).

The purposes for which the Uniform Commercial Code was enacted support the conclusion that warrants which satisfy the statutory definition of negotiability must be deemed negotiable. Univentures claims that state warrants should be deemed non-negotiable because the state must retain its rights to assert the defenses of a maker in order to maintain and protect its fiscal policies, practices, and procedures. This argument is directly contrary to the Code's policy of promoting commercial transactions by allowing a party to ascertain the negotiability of an instrument from its face. 5 R. Anderson, *Uniform Commercial Code*, § 3–104:4 (1984) ("The whole idea of the facilitation of easy transfer of notes and instruments requires that a transferee be able to trust what the instrument says, and be able to determine the validity of the note and its negotiability from the language in the note itself."). To carve out an exception to the statutory definition of negotiability would jeopardize Article III's purposes of clarifying and modernizing commercial transactions by allowing reliance on written instruments. The transferee of an instrument must be able to rely on the negotiability of the instrument as evidenced by the instrument's terms, so that the transaction is not stalled while the transferee verifies its rights on the instrument.[6]

No Alaska case law addresses the issue of whether a state treasury warrant constitutes a negotiable instrument. Prior to the enactment of the Uniform Commercial Code, warrants issued by states, local governments, and municipalities were almost universally deemed non-negotiable. *See, e.g., Negotiability of County, Municipal, School, State, or Town Warrants*, 36 A.L.R. 949, 949 (1925); *Hamilton Nat'l Bank v. Pool*, 144 S.W.2d 670, 671 (Tex.

App.1940); *State v. Liberty Nat'l Bank & Trust Co.*, 414 P.2d 281, 283 (Okla.1966). The drafters of the Uniform Commercial Code apparently intended to change this body of law, however, as evidenced by the Official Code Comment to § 3–105. 5 R. Anderson, *Uniform Commercial Code*, § 3–105:1, at 228 (1984) ("[Section 3–105(1)(g) ] will permit some municipal warrants to be negotiable if they are in proper form.").[7]

Those courts which have considered the negotiability of government warrants have generally found those warrants to be negotiable so long as they satisfy the Code's requirements. The Louisiana Court of Appeal held that a warrant issued by a levee district to pay a construction company was a negotiable instrument. *St. James Bank & Trust Co. v. Board of Comm'rs*, 354 So.2d 233 (La.App.1978). The construction company in that case had negotiated the warrant to a bank. After the levee's Board of Commissioners stopped payment on the warrant, the warrant was returned to the bank unpaid. The court found that the warrant was a negotiable instrument because it satisfied the requirements of § 10:3–104 of the Louisiana statutes. That section is identical to AS 45.03.104. *Id.* at 234.

Similarly, the Supreme Court of Nebraska held that a warrant issued by a county sanitary and improvement district was a negotiable instrument. *Sanitary & Improvement Dist. v. Continental Western*, 215 Neb. 843, 343 N.W.2d 314 (1983). In that case, the sanitary and improvement district which had issued capital and improvement warrants sought a judicial declaration of the invalidity of the warrants. After examining the warrants in light of § 3–104 of the Nebraska Uniform Commer-

---

**6.** If the state truly believes that the non-negotiability of treasury warrants is essential to maintain and protect its fiscal policies, the state could make its warrants non-negotiable simply by printing "non-negotiable" on the face of the warrants.

**7.** All of the cases cited by Univentures and the state are distinguishable from the present case for the reason that all were based upon the "law merchant" which has now been replaced in

Alaska by the Uniform Commercial Code. *See Prince v. LeVan*, 486 P.2d 959, 962 (Alaska 1971) ("By legislative declaration the code is the law, and if general principles appear inconsistent, they must be considered displaced under [this section]. Moreover, even where inconsistency does not exist, the code must be regarded as supreme; general principles even when consistent with the code are merely supplementary.").

cial Code, which is almost identical to AS 45.03.104, the Supreme Court of Nebraska held that they were negotiable instruments.

We are mindful of a 1987 attorney general opinion which concluded that state treasury warrants are not negotiable. While attorney general opinions are entitled to some deference in matters of statutory construction, they are not always correct.[8] In this instance we are unconvinced by the attorney general's opinion. It fails to consult the language and policies of the Uniform Commercial Code, and it relies mainly on cases examining the negotiability of warrants arising prior to the enactment of the Uniform Commercial Code.

The decision of the superior court is REVERSED. The $12,143.47 on deposit with the court is awarded to NBA.[9]

8. *Carney v. State Board of Fisheries,* 785 P.2d 544, 548 (Alaska 1990) ("Opinions of the attorney general, while not controlling on matters of statutory interpretation, are entitled to some deference."); *Girves v. Kenai Peninsula Borough,* 536 P.2d 1221, 1225 (Alaska 1975) ("We hold that the 1962 Attorney General's opinion is in error insofar as it concludes that the territorial government of Alaska had no power to accept the right-of-way granted in 43 U.S.C. § 932 (1964).").

9. The parties to this appeal stipulated that if we reverse the superior court's determination that the warrant is a negotiable instrument, Univentures waives all other claims to the interpled money against NBA and the state, including the claim that NBA was not a holder in due course of the instrument.