Richard E. WAGNER, Appellant,

v.

KEY BANK OF ALASKA, as Successor to First National Bank of Fairbanks, Barbara J. Wagner, Alaska 100 Insurance, Inc., Van Arnem Financial Services, Inc., George Whitney Kemper, Kathleen Kemper, Alaska Title Guaranty Agency, and all other unknown claimants in and to any of the properties being foreclosed, Appellees.

No. S–4499.

Supreme Court of Alaska.

Jan. 22, 1993.

Rehearing Denied Feb. 23, 1993.

bankruptcy estate was improperly substituted for Wagner as the real party in interest in this foreclosure action.

Karl L. Walter, Jr., Anchorage, for appellant.

Barbara L. Schumann, Staley, DeLisio, Cook & Sherry, Fairbanks, for appellees.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The principal issue we address in this appeal is whether Richard Wagner (Wagner) gained individual contract rights under the terms of a 1989 settlement agreement with Key Bank of Alaska (Key Bank). The parties entered into the settlement after Wagner filed a Chapter 11 bankruptcy petition and was appointed as "debtor-in-possession" of the bankruptcy estate by the bankruptcy judge in charge of the case. The settlement was intended to resolve disputes and facilitate the sale of certain bankruptcy estate properties which partially secured Wagner's indebtedness to Key Bank. Wagner maintains that he contracted in the settlement for an individual right to repurchase some of the properties which were to be transferred to Key Bank under the agreement. Therefore, according to Wagner, the right of repurchase was not part of the bankruptcy estate.

Because this settlement agreement involved bankruptcy estate property in which Wagner, as debtor-in-possession, acted as a fiduciary under the supervision of a bankruptcy judge, sound public policy dictates that we refuse to recognize any individual contract rights allegedly acquired under the agreement without the express recognition of those rights by the bankruptcy judge. We therefore find no merit in Wagner's contention that the trustee of his

## I. FACTS & PROCEEDINGS

Because Wagner was effectively dismissed from this action without a hearing, no findings of facts control this appeal. However, the following facts are undisputed in the record.

Wagner and Alaska 100 Insurance, Inc. (Alaska 100), a corporation in which Wagner held interests, borrowed more than three million dollars over several years from First National Bank of Fairbanks, the predecessor in interest of Key Bank. Wagner personally guaranteed the debts of Alaska 100. Wagner's wife, Barbara Wagner, personally guaranteed the debts of Wagner and Alaska 100. The Wagners and Alaska 100 secured the loans through deeds of trust (and other security agreements) on their real and personal property.

In March 1988 Wagner filed a Chapter 11 bankruptcy petition and became the debtor-in-possession of the newly created bankruptcy estate.[1] Key Bank obtained relief from the automatic stay permitting Key Bank to foreclose its interests in certain real and personal property belonging to the bankruptcy estate.

Shortly thereafter Key Bank, the Wagners and Alaska 100 entered into an agreement "in settlement of any and all claims ... arising from and out of loans made by [Key Bank]." The agreement expressly acknowledged that "Richard E. Wagner's participation in the settlement was subject to [the] confirmation, approval or ratification of the Bankruptcy Court."

In the agreement, the parties stipulated that the borrowers jointly and severally owed Key Bank a principal loan balance of $2,480,519.44, and Key Bank agreed to limit the "interest, costs and attorney's fees owed by the Borrowers, to a total amount

1. The commencement of a Chapter 11 bankruptcy case creates a bankruptcy "estate" which, except for a few statutory exceptions, is comprised of all the debtor's pre-bankruptcy property. 11 U.S.C. § 541 (1988); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir.1987), *cert. denied* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988)

of $430,000.00." The agreement further provided that Key Bank could judicially foreclose on the property which had been pledged as collateral for the loans. In addition, the agreement provided as follows:

> Excluding the oil leases, *properties transferred or to be transferred to [Key Bank] may be purchased by the Wagners for the appraised values listed in the settlement agreement, for cash, until [Key Bank] has agreed to sell the properties to someone else.* [Key Bank] may enter into such an agreement with a third party unless it has received a tender of the actual cash purchase price from the Wagners. (Emphasis added).

With the exception of certain senior claims, Alaska 100 and the Wagners also agreed to hold Key Bank harmless from all claims to the property by other parties.

The Bankruptcy Court Judge, Herbert Ross, approved the settlement agreement in December 1989, adding the following note:

> The court interprets the duty to "defend, indemnify, and hold [Key Bank] harmless" from claims of other parties, as it relates to debtor, ... only binds Richard Wagner as an individual, but not the bankruptcy estate or R. Wagner as a debtor-in-possession.

In January 1990 Key Bank filed the foreclosure action from which this appeal originates. The complaint incorporated the settlement agreement and prayed for a judgment foreclosing Key Bank's interests against the pledged properties and enforcing the terms of the settlement. The Wagners separately filed non-oppositions to the relief requested. On May 14, 1990, Superior Court Judge Richard D. Savell entered a Judgment and Order of Sale. The foreclosure sale was scheduled for July 26, 1990.

Before the sale occurred, Wagner filed a complaint in bankruptcy court as debtor-in-possession seeking, among other things, to have the sale postponed. Judge Ross denied the requested restraining order against the scheduled sale. However, in the meantime, Barbara Wagner and Alaska 100 had also filed Chapter 11 bankruptcy petitions which stayed any action on the May 14th Order of Sale. Key Bank later obtained relief from these stays.

In October 1990 Key Bank moved to amend its complaint and requested an "amended judgment and order of sale." Over Wagner's pro per opposition, Judge Savell allowed the amended complaint without vacating the earlier Judgment and Order of Sale. Key Bank filed its amended complaint seeking damages for alleged breaches of the settlement agreement by Alaska 100 and the Wagners.

In December 1990 Wagner answered the amended complaint and asserted a counterclaim seeking specific performance of the settlement agreement. In January 1991, pursuant to Bankruptcy Judge Ross' order, Kenneth Battley was appointed Chapter 11 trustee for Wagner's bankruptcy estate, and Wagner was relieved of his position as debtor-in-possession. Key Bank then requested that the superior court substitute Battley for Wagner as the real party in interest in the foreclosure action. Key Bank also filed a notice with the superior court that it would sell the foreclosed property based on the May 14th Judgment and Order of Sale.

On February 14 Battley answered the amended complaint as trustee of Wagner's bankruptcy estate and requested that Key Bank be enjoined from proceeding with the sale. On February 25 Judge Savell ordered that Battley be "substituted as defendant in this case in the place of Richard E.

("Once the bankruptcy petition has been filed, property rights belonging to the debtor under state law become assets of the estate."). A debtor may retain control of the bankruptcy estate as "debtor-in-possession," but the debtor's role is changed from that of outright owner to that of a fiduciary who represents both the debtor's es-

tate and the creditors' interests. 11 U.S.C. § 1107 (1988); *Koch,* 831 F.2d at 1342 & n. 3; *In re V. Savino Oil & Heating Co.,* 99 B.R. 518, 524–25 (Bankr.E.D.N.Y.1989) ("As *de jure* trustee, the debtor-in-possession holds its powers in trust for the benefit of creditors.").

Wagner" and further ordered that Wagner's answer be stricken.[2] Key Bank then requested a ruling that the first Order of Sale was still in effect. Wagner opposed the request claiming that he had individual contract rights under the agreement which were not part of the bankruptcy estate.

In March 1991 Key Bank and Battley as trustee entered into a new stipulated settlement. The stipulation provided that Key Bank and Wagner's bankruptcy estate were bound by the original settlement agreement and also recognized the continued validity of the first Judgment and Order of Sale. It also provided that Key Bank was released from:

> any and all provisions of the [original] settlement agreement which in any way provide rights of repurchase ... [to] the debtors or their family members [or] limit post-settlement interest, costs or attorney's fees.

The stipulation proclaimed that it is binding upon the "Bankruptcy Estates of Richard E. Wagner, Barbara J. Wagner, and Alaska 100 Insurance, Inc., their bankruptcy and other estates ... and their assigns, heirs, and transferees." [3]

Before the bankruptcy court, Wagner opposed the new settlement stipulation and requested that Bankruptcy Judge Ross withhold his approval. In the opposition, Wagner again argued that he and members of his family obtained individual rights under the settlement that could not be voided without their consent. Nonetheless, Bankruptcy Judge Ross approved the new settlement agreement and ruled that it was binding upon Wagner's estate.[4]

After the trustees for the three bankruptcy estates dropped any challenge to the foreclosure sale, Judge Savell ruled that the first Judgment and Order of Sale was valid and that the foreclosure sale could proceed. The foreclosure sale was conducted on March 26, and Key Bank moved for confirmation. Although Wagner opposed the motion, Judge Savell confirmed the sale on June 3, 1991.

Wagner now appeals the February 25 order striking his answer and substituting Battley as the real party in interest. He also appeals the June 3 order confirming the foreclosure sale.

## II. *DISCUSSION*

Wagner claims an individual contract right to repurchase certain bankruptcy estate properties that were transferred to Key Bank in the settlement agreement. Wagner contends that the superior court should not have named Battley as the real party in interest in the foreclosure action because Wagner still retained individual rights to the properties involved. He further contends that the court erred in striking his answer and failing to resolve his counterclaim because this effectively deprived him of a property interest without due process.

Key Bank maintains that Wagner has no individual rights under the settlement agreement. In its view, all rights under the agreement, including the right of repurchase, belonged solely to Wagner's bankruptcy estate. Thus, Key Bank maintains that Battley was properly substituted as the real party in interest when Wagner was removed as debtor-in-possession.

---

**2.** The record is unclear as to whether the February 25 order was intended to dismiss Wagner in his *individual* as well as his *representative* capacity. However, this appeal hinges on whether Wagner may assert individual contract rights under the first settlement agreement. Therefore, for purposes of this appeal, we will assume that the February 25 order dismissed Wagner in both his individual and representative capacities.

**3.** Key Bank obtained virtually identical stipulated settlements from the trustees in bankruptcy for Barbara Wagner and Alaska 100 Insurance, Inc. This is significant because any individual right of repurchase that Barbara Wagner may have acquired under the original settlement agreement passed automatically to her bankruptcy estate upon the filing of her Chapter 11 bankruptcy petition. *See supra,* note 1.

**4.** The order does not indicate Bankruptcy Judge Ross' reasons for granting approval in the face of Wagner's objections.

Moreover, Key Bank argues that no error occurred if the court dismissed Wagner as an individual because Wagner never pled or established any interest separate from his bankruptcy estate.

Although Wagner claims several procedural errors, this appeal may be reduced to the question whether the original settlement agreement effectively gave Wagner an individual right to repurchase the properties involved in this foreclosure action.[5] If, as a matter of law, the agreement did not confer individual rights on Wagner, he could not possibly have suffered harm as a result of the alleged errors.

### A. *Subject Matter Jurisdiction*

■ Wagner appeals his dismissal from a judicial foreclosure action. Over this, we certainly have jurisdiction. Nonetheless, resolution of this appeal involves the interpretation of a settlement agreement which was subject to and contingent upon the approval of Bankruptcy Judge Ross. *See* Bankr.Rule 9019, 11 U.S.C. (1988); *Reynolds v. Commissioner*, 861 F.2d 469, 473 (6th Cir.1988) ("In bankruptcy proceedings, as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable."). As a preliminary matter therefore, we must determine whether our court has subject matter jurisdiction to independently interpret this agreement. The relevant authorities convince us that we do.

The United States District Courts, and by extension the United States Bankruptcy Courts, have "original and exclusive" jurisdiction over all bankruptcy cases. 28 U.S.C. § 1334(a) (1988). However, the federal courts' exclusive jurisdiction extends only to the bankruptcy petition itself. *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987). State courts enjoy concurrent jurisdiction with the federal courts over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (1988);[6] *In re Wood*, 825 F.2d at 93 (stating the test for "relatedness" as "whether the outcome of [the] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy") (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). The dispute concerning Wagner's settlement with Key Bank thus could have been pursued in federal bankruptcy court but may also be pursued in our state courts. *See, e.g., Stevenson v. Prairie Power Coop., Inc.*, 118 Idaho 52, 794 P.2d 641, 645–46 (Ct.App.1989).

### B. *The Merits*

■ In our view, two features of this case control the analysis: Wagner's fiduciary duty as debtor-in-possession and the lack of express bankruptcy court approval for Wagner's claimed "individual contract rights."

Wagner argues that he bargained both as an individual *and* as a debtor-in-possession during settlement negotiations with Key Bank and obtained rights and incurred liabilities in both roles. We believe that Wagner's "different hat" argument cannot be reconciled with the fiduciary duty Wagner owed both to his creditors and to his bankruptcy estate when he used bankruptcy estate property to settle the claims with Key Bank.

■ Loyalty and the disavowal of self interest are hallmarks of the fiduciary's role. *See generally In re Republic Fin.*

---

**5.** This issue presents a question of law which we examine *de novo*. *See National Bank of Alaska v. Univentures 1231*, 824 P.2d 1377, 1379 (Alaska 1992).

**6.** 28 U.S.C. § 1334(a) & (b) provide:
(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*Corp.*, 128 B.R. 793, 802 (Bankr.N.D.Okla. 1991); *see also In re Russo*, 762 F.2d 239, 241–42 (2d Cir.1985). Accordingly, some courts have ruled flatly that a Chapter 11 trustee or debtor-in-possession "may not deal on his or her behalf with property of the bankruptcy estate." *In re Q.P.S., Inc.*, 99 B.R. 843, 845 (Bankr.W.D.Tenn.1989). As one court noted, "[a]ny settlement between the debtor and one of his individual creditors necessarily affects the rights of other creditors by reducing the assets of the estate available to satisfy other creditors' claims." *Reynolds*, 861 F.2d at 473. Therefore, Wagner was not free to bargain in his individual capacity for the right to repurchase bankruptcy estate property without regard to the interests of the estate or the estate's creditors.[7]

■ Even if Wagner's attempt to obtain individual contract rights under the agreement was not itself a breach of his fiduciary duty, he clearly acted improperly in failing to fully disclose his intentions and obtain express approval for his claimed individual rights when he went before Bankruptcy Judge Ross requesting approval for the proposed settlement. *In re Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr.E.D.N.Y.1989) ("One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed of the nature, status and condition of the business undergoing reorganization.... Open, honest and straightforward disclosure to the Court and creditors is intrinsic to the entire reorganization process and begins on day one, with the filing of the Chapter 11 petition.").

The notation on the order approving the settlement states that certain *obligations* were binding on Wagner in his individual capacity and did not bind the bankruptcy estate. Nothing in the order, and indeed nothing in the entire record presented on appeal, indicates that Bankruptcy Judge Ross ever recognized or approved of Wagner obtaining individual *rights* under the settlement. Wagner now argues that the right of repurchase was a burden to the estate and points to the bankruptcy trustee's stipulated settlement with Key Bank disclaiming any interest in the right of repurchase as proof of the inconsequential value the estate placed on this contract right. Our response to this argument is that it is being made to the wrong tribunal. We have no way of determining the value of this contract right to the estate or Wagner's creditors and will not infer little or no value from the fact that the bankruptcy trustee disclaimed this right in settling its dispute with Key Bank.

We hold, therefore, as a matter of law and sound policy, that the original settlement agreement gave Wagner no individual contract rights which we are prepared to recognize. Because Wagner could not enforce his claimed contract right in this foreclosure action, he was not prejudiced when he was effectively dismissed from the case. Accordingly, we affirm the superior court's orders substituting Battley for Wagner and confirming the foreclosure sale.

AFFIRMED.

---

**7.** A federal criminal statute provides:

> Whoever being a custodian, trustee, marshal, or other officer of the court knowingly purchases, directly or indirectly, any property of the estate of which he is an officer in a case under title 11....
>
> ....
>
> Shall be fined not more than $500, and shall forfeit his office....

18 U.S.C. § 154 (1988). Federal courts have treated a debtor-in-possession as either a "trustee" or "officer of the court" in applying this statute. *See In re Russo*, 762 F.2d at 241–42; *In re Q.P.S.*, 99 B.R. at 844–45. It appears to us that a debtor-in-possession who contracts for the right to repurchase estate property which is being transferred to a creditor of the estate comes perilously close to "indirectly" purchasing property of the estate. However, this is not to say that Wagner was precluded from bidding on the property at the foreclosure sale after being removed from his position. *See In re Met–L–Wood Corp.*, 861 F.2d 1012, 1019 (7th Cir.1988) ("It is commonplace, and involves no impropriety, for the debtor himself to bid [on former estate property] at a foreclosure sale."). Ultimately, it is unnecessary for us to determine the actual criminality of Wagner's actions.

COMPTON, Justice, concurring.

I concur in the result only because I conclude that Wagner is pursuing his claim in the wrong forum.